JAMES A. CANIFF v. THE BLANCHARD NAVIGATION COMPANY.

*Negligence—Shipping—Liability of owner of vessel—Principal and agent—Contributory negligence.*

1. *Actionable* negligence exists from an omission to perform the duty of observing due care, according to the circumstances, to prevent injury to the person or property of one who has the *right* to expect the duty will be performed.

2. The owner of a vessel laid up in port in the winter season has a right to leave the hatchways open and unprotected, except by the usual coamings, and all persons walking upon the decks are chargeable with notice of the probable presence of such open hatchways.

3. The failure of a ship-keeper who, contrary to the orders of the owner, invites a person on board while the vessel is laid up for the winter season, to inform him of the existence of an open hatchway, if negligence, cannot be imputed to such owner.

4. Where the captain of a vessel employs a mate for the coming season, the vessel being then laid up for the winter in port, and invites him to inspect the vessel, but fails to inform him of open hatchways on board, into one of which he falls and is injured,—

   *Held,* that, conceding the *right* of the mate to make such inspection, the injury was caused through the negligence of a fellow-servant, which precluded a recovery, as would also the contributory negligence of the mate.

5. The rule that the occupier of premises is bound, as to persons thereon by his express or implied invitation, to keep the same free from, or give warning of, danger known to him and unknown to the visitor, has no application to the case of a person who, from his experience in sailing a vessel, knows that it is cus-

tomary to leave the hatchways of vessels open while lying in port, and that they are sources of danger which he must avoid at his peril.

Error to Wayne.   (Jennison, J.)   Argued June 15 and 16, 1887.   Decided July 7, 1887.

Case.   Defendant brings error.   Reversed.   The facts are stated in the opinion.

*George S. Hosmer*, for appellant.

*W. L. Carpenter* (*R. E. Frazer*, of counsel), for plaintiff.

CHAMPLIN, J.   This is an action brought by the plaintiff to recover damages arising from alleged negligence of the defendant as owner of the steam-vessel called "The Don M. Dickinson."

He alleges in his declaration that this vessel was constructed with a main or lower deck, and an upper deck, through which, at occasional intervals, holes were cut for the purpose of loading and unloading freight, called hatchways; that the main deck, on the eleventh day of March, 1886, was entirely closed in, by the covering being placed over the gangways, and over the hatchways on the upper deck, and the hatchway in the forepart of the main deck was negligently left uncovered and open.

That, on the day aforesaid, plaintiff contracted with William J. Crosby, the master and keeper of said barge, and a duly-authorized servant of said defendant, to work on said boat as a mate thereon, through the season of navigation next ensuing, which would commence some time after the first day of April, 1886; that, after the aforesaid engagement was made, the plaintiff then, at the invitation of Crosby, went on board the said barge to inspect the same; that he got on board of said boat on its upper deck at a point near the forepart of the same, and walked lengthwise on said deck

to the afterpart of the boat, and there descended a ladder to the main deck, on reaching which, owing to the facts above set forth, he found himself in total darkness; and, not knowing the whereabouts of said Crosby, who had preceded him, he shouted, and said Crosby, who in the meantime had reached the forepart of the main deck of said boat, answered, and negligently told said plaintiff to come forward, and negligently omitted to warn said plaintiff that said hatchway was uncovered.

That plaintiff thereupon proceeded along towards the forepart of said boat, not knowing that said hatchway was uncovered, and not knowing the location of said hatchway, and owing to the darkness, being unable to discover the same; and while so proceeding, in consequence of the negligence of the servant of the above-named defendant above set forth, and in the exercise of due care on his part, said plaintiff fell through said uncovered hatchway, through said main deck, into the hold of said barge, about 10 feet below. The declaration then sets forth the injury received in consequence thereof.

A second count of the declaration alleges the negligence of the defendant to consist in leaving the hatchway uncovered, and that he was upon said boat by invitation of the keeper of said boat, a duly-authorized servant of the defendant, and that the servant negligently invited him to come forward, and negligently omitted to inform him of the whereabouts and condition of said open hatchway.

All of the testimony given upon the trial is returned in the bill of exceptions, from which it appears that the plaintiff had been sailing for 12 to 14 years, and was familiar with the boats as they are laid up; that the steam barge Don M. Dickinson was what is known as an iron boat, and had been built as a blockade runner; that this boat, and a steam-tug called the "Justice Field," had been in use by defendant during the season of 1885, and at the latter part of the sea-

son were laid up in winter quarters in a slip at the foot of Adair street, in the city of Detroit.

William J. Crosby had been employed as master of the Don M. Dickinson during the season of 1885; and, when she was laid up in the fall, his duties as such master ceased, and he was employed as ship-keeper of the vessels. His duty as ship-keeper was to keep all people off of the vessels, and to see that they were aired, and to keep the snow shoveled off, and, in case they commence to leak, to pump them out.

·It also appears that it is a universal custom when vessels are in port, and especially when laid up for the winter, to ventilate them for the purpose of stopping decay in them, and, in the case of iron vessels, to protect them from rusting. This is done by removing the hatches, to allow the air to circulate through the hold. The hatches of the main deck of the double-decked vessels are always kept off on bright days, or on good windy days, and upper hatches are also taken off, so that the circulation of air will be complete. If it be stormy, the top hatches are closed, leaving the lower ones open.

It is the ship-keeper's duty to attend to the proper ventilation of the vessel, and, as such ship-keeper, Capt. Crosby received postive instructions from the manager of the defendant company to allow no persons on board these vessels without a written order from him or the president.

The Don M. Dickinson has three hatchways,—forward, midship, and aft; and they have the ordinary coamings of a vessel of her capacity, being about 10 inches in height. On the day in question the forward hatch had been left off for the purpose of ventilation.

It is claimed by the plaintiff, and his testimony tended to prove, that, at the close of navigation in the fall of 1885, Capt. Crosby was promised by the defendant to be retained in its employment as captain during the season of 1886 on

board the Don M. Dickinson in case she was put in commission.

It is also claimed, and the testimony tended to show, that it was the custom for captains of such vessels to engage the mate, and that, on the eleventh day of March aforesaid, Capt. Crosby engaged the plaintiff to sail with him as mate on the Don M. Dickinson the coming season; that the engagement was made at some place on Jefferson avenue, and at that time plaintiff had never looked over the boat; that he went down to the boat with Capt. Crosby for the purpose of looking it over; that on Adair street they were met by two men that were buying junk, who asked Capt. Crosby if he had any junk to sell. He told them to come down, and he would see if he had. They proceeded to the slip, when Mr. Crosby requested plaintiff to wait, and see which way a man turned who was in a buggy, and then come forward. The others went aboard, to do which it was necessary to ascend by a ladder near the forepart of the ship to the upper deck, and there pass aft, and descend to the main deck through the scuttle. Plaintiff waited a minute, and then went upon the upper deck, and down through the scuttle. On reaching the main deck, he found it was all dark. The others had gone forward. He hallowed, and asked them where they were, and Capt. Crosby told him to come up forward. He walked forward, and walked into the open hatchway.

The plaintiff testified that:

"There was a coaming on the hatch that I fell in. I walked right over it. Of course, it was in the dark. I could not see. I should judge the coaming was ten inches or a foot. I never measured it; but I know about what they are. *   *   *   *   *   *   *   *   *   *   *

"Had been mate, and had sailed on the lake for some time, and was familiar with the boats, and the method of laying them out.    *   *   *   *   *   *   *   *

"The ship was not in commission. It was lying there, and had been all winter, I suppose. That was the first I saw of her that day. I have been sailing for 12 or 14 years, and am familiar with the boats as they are laid up.     *     *     *

"When we ship on a boat, we generally look around to see how the boat looks. She was not fitted up then, but just as she went into winter quarters, and required considerable fitting up before she would go in commission; but I generally looked around the boat when I shipped on her,—when the captain asked me to go down to take a look at her I would not have gone if I had not been asked to.     *     *     *

"The Don M. Dickinson is what is called a double-decker, with an upper and a lower deck. I was familiar with double-deckers. I worked on them; but, of course, I never went in there when they were shut up like this, and I did not know but what those hatches were on. I thought I could walk through there, and walk over the hatches. I didn't know the hatches were off. It was dark. I could not tell exactly where the hatches were. I could tell pretty near. Of course, I walked right over the edge of the coamings, and the hatches were off. The hatches go right on each side of the passage-way nearly on both sides, most. I was walking through the passage, and walked into the hold. That passage is probably fifteen feet wide. There were four hatches. This was the forward hatch on the starboard side. I did not see whether the other hatches were covered.     *     *     *

"The way I walked was the usual way in walking between those decks. The middle hatch is in the center of the boat, and takes up two-thirds of the main deck.

"And you know the usual way of traveling along the side of a propeller is to go by the side of the hatch; that the hatch is always in the center of the boat?

"A. Certainly, I know that the side of the hatch—there is not much room in the center—there is not much room in between decks; and the manner of walking—you are just as liable to walk in the hatch as you are going in the center. Along each side of the hatches fore and aft there is a stanchion to support the upper deck. There is none forward ship. I fell in the forward hatch, starboard side."

The plaintiff's right to recover damages is based upon the negligence of the defendant.

Actionable negligence exists from an omission to perform the duty of observing due care, according to the circum-

stances, to prevent injury to the person or property of one who has the right to expect the duty will be performed.

It is clear to me that no negligence can be imputed to the defendant in leaving the hatch off from the hatchway of the vessel through which plaintiff fell. The act, in itself, involved no breach of duty. These hatchways are intended to be left open a large portion of the time when vessels are in port, and especially when they are laid up for the winter. At such seasons of the year the owner has the right to leave the hatchway open and unprotected, except by the usual coamings, and all persons walking upon the decks of such vessels are chargeable with notice of the probable presence of open hatchways on the deck. It would be preposterous to hold that the owner who places his vessel in charge of a ship-keeper during the time she is out of commission, and lying in winter quarters, is charged with the duty of building a railing around the open hatchways, or with maintaining a light to indicate danger, for the purpose of protecting persons from injury by falling into them.

It is true, the plaintiff testified that it was the custom to leave the hatches off for the purpose of ventilation, but he says that they put a railing around them so as not to make a trap for a man to fall into. I am satisfied that this testimony was intended more as an excuse for his own carelessness than to establish the fact that it was usual to protect the open hatchways by a railing. On cross-examination he was unable to tell exactly when he saw a hatchway protected by such railing. He says it was a passenger boat in the spring of the year, when they were getting her ready for navigation, and not in the winter time, when she was laid up. This was the only instance he ever knew of where such protection was provided. I do not think it establishes the duty contrary to what is known and recognized as the established custom. *Dwyer v. National Steam Ship Co.*, 4 Fed. Rep. 493.

In the case cited the court said:

"Such a duty would be burdensome in the extreme, and is not required by the law. The requirement would be unreasonable, has never been observed in practice, nor, so far as I know, declared in any adjudicated case."

That was a case of a vessel lying in port being laden for a voyage, and the injury occurred by falling through a hatchway that was defectively covered. If a ship-owner owes no duty to a party injured under such circumstances, how much less does he owe a duty to keep the hatchways covered and safe when the vessel is laid up in the winter season, when navigation is suspended, when no one has business upon her, and when she is placed in charge of a ship-keeper whose duty is to keep the hatchways open for ventilation, and to keep all persons off the boat without they have written permission to go on board from the manager or owner.

Equally untenable is plaintiff's claim that he was invited on board, and was injured by the negligence of the ship-keeper in telling him to come forward without informing him that the hatchway was open. The ship-keeper was not authorized to invite him on board, and he did not represent the owner in calling to him to come forward; and the negligence of the ship-keeper to inform plaintiff of the open hatchway, if it was negligence, cannot be imputed to the owner. The ship-keeper was not acting in the line of his duty, but in violation of his positive orders. It was shown upon the trial that he had no authority to invite the junk-dealers on board, or to sell the junk on such vessel. But it is urged that the ship-keeper, who had been retained as captain of the vessel when she should go into commission the next season, if she was put into commission, had the authority to engage his mate, and had actually engaged plaintiff to act as such mate on the very day of the accident, and previous thereto, and that he was acting under this engagement, and induced thereby when he went on board, as he says, to inspect her. How such inspection was necessary

at this time before he knew whether the boat would be put in commission or not does not plainly appear. He testifies, and so does Capt. Crosby, that at that time he had been retained as mate at $65 a month; the bargain was completed; and his theory is that he was at that time the mate, and had the right to go on board to inspect her. If this theory be true, his injury was caused through the negligence of a fellow-servant, and this would preclude his recovery.

Whether he was rightfully on or not, his own negligence contributed to the injury. He was an experienced sailor. He was familiar with the double-decked vessels. He knew they had the hatchways, and he knew they were liable to be open when the vessel was in port. He knew that the deck of this vessel was not a highway, and was a place where open hatchways must be maintained, and therefore to be expected and avoided. *Dwyer v. National Steam Ship Co.*, 4 Fed. Rep. 493; *The Helios*, 12 Id. 732; *The Victoria*, 13 Id. 43; *The Carl*, 18 Id. 655; *The Germania*, 9 Ben. 356.

With all this knowledge and experience on the part of the plaintiff, he walks carelessly forward in the dark, and says that instead of expecting the hatchways open, and exercising care to avoid them, he expected them to be closed, and that he could walk across them. This, under the circumstances, was inexcusable negligence on his part, and a disregard of all that his knowledge and experience had or should have taught him. *The Gladiolus*, 21 Fed. Rep. 417; *The Carl*, 18 Id. 655.

We are cited to the case *The Guillermo*, 26 Fed. Rep. 921, as being in point for the plaintiff. That was a case of an injury to a roundsman whose duty it was to see that the night inspectors on board ship were at their posts. On visiting the vessel during the evening, the night inspector not answering to his call, he went on board to find him. On passing along a covered passage-way which was quite dark, he stumbled upon the coamings of an open hatch leading to the coal-

bunkers, and received the injuries complained of. The court said:

"The libelant went upon the ship lawfully, and in discharge of his duties. The open hatch was not in the situation of the ordinary open hatches for a discharge of cargo, and such as may be expected to remain open in port, and which persons going upon the ship must avoid at their peril. This hatch was in a comparatively narrow passage-way along the side of the ship. To leave it open in a covered passage-way, which was perfectly dark, I must hold negligence in respect to the libelant, whose duties called him there."

The distinction between this case and the one before us is plain. The hatchway through which plaintiff fell was the ordinary one used for loading and unloading vessels, and was in the ordinary place, and was such as might—

"Be expected to be open in port, and *which persons going upon the ship must avoid at their peril.*"

The opinion serves to emphasize the carelessness of the plaintiff when viewed in the light of his familiarity of such vessels, and the custom necessarily observed in ventilating them.

The cases and principles advanced by plaintiff to support the judgment recovered by him are familiar, but do not apply to the facts and circumstances of this case.

The occupier of premises, no doubt, is bound, as to persons thereon by his express or implied invitation, to keep the premises free from, or give a warning of, danger known to him and unknown to the visitor. But this rule has no application to a case where a person who from his experience, through many years, in sailing a vessel, knows that it is customary to leave the hatchways of vessels open while lying in port, and whom observation teaches that they are liable to be open rather than closed, and are sources of danger which he must avoid at his peril.

Likewise inapplicable are those cases where the injury was

occasioned by defective or unsafe construction of the premises, or by careless erections thereon. No person is bound to expect that there is danger to be avoided in such cases, and they have a right to rely upon the apparent security and safety of the premises where there is nothing in the locality or surroundings to lead them to expect peril.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred.