STAMFORD OIL MILL COMPANY v. W. T. BARNES.

No. 2072.    Decided May 25, 1910.

**1.—Negligence—Dangerous Premises—Injury to Child—Charge.**

Owners of premises are not under any general duty, in putting thereon buildings used by them in their legitimate business, to exercise care to make them safe for the use of others, even children, coming thereon without invitation, authority or allurement.  (P. 413.)

**2.—Same—Cases Followed or Disapproved.**

San Antonio & A. P. R. Co. v. Morgan, 92 Texas, 98; Dobbins v. Missouri, K. & T. Ry. Co., 91 Texas, 60; Missouri, K. & T. Ry. Co. v. Edwards, 90 Texas, 65, followed. Dublin Oil Co. v. Jarrard, 40 S. W., 531, disapproved.  (Pp. 412, 413.)

**3.—Negligence—Dangerous Premises—Injury to Licensee.**

One erecting on his own land, an oil mill or other like establishment for pursuing in the ordinary way one of the ordinary businesses of the country, is under no duty to erect safeguards for children intruding upon his premises; but a duty arises to those invited to the premises to do business to keep reasonably safe for their use the parts of the establishment to which they are so invited; and a duty of care may arise from knowledge of the presence and danger of persons liable to be injured, such as children.  (Pp. 413, 414.)

**4.—Same—Cases Distinguished.**

Dublin Oil Co. v. Jarrard, 91 Texas, 289; Const. Co. v. Bostick, 98 Texas,

239; Cook v. Direct Nav. Co., 76 Texas, 353; and the "Turntable Cases" distinguished.   (P. 414.)

**5.—Negligence—Dangerous Machinery—Cotton Hull Conveyor—Duty to Minor —Parent's Action.**

A minor repeatedly sent by his father to purchase cotton seed hulls at an oil mill and who knew the danger involved in getting a foot caught in the "conveyor" there situated, going again to make such purchase to the hull house to which he had been directed for that purpose on previous occasions by the employes, but to a different entrance, and while standing on a bridge over the conveyor, which was boxed in except at that point, watching its operation, lost his balance and got his foot caught in and injured by the conveyor.   In an action by his father for damage to him by the injury to his child, held, that no negligence of which plaintiff could complain arose from defendant's failure to warn the child against danger, since he knew the danger, and plaintiff himself was equally negligent in not giving him any warning; that defendant's negligence could consist only in inviting the child into a position of danger of which he was ignorant, whereas he was here shown to understand the danger and how to avoid it; that a recovery by plaintiff was unwarranted and should be reversed and judgment rendered for defendant.   (Pp. 411–416.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Jones County.

Barnes sued the company and had judgment.   Defendant appealed and on affirmance obtained writ of error.

*Andrews & Presler,* for plaintiffs in error.—That defendant owed no duty to English Barnes, the injured boy, and was not negligent under the facts whereby it became liable.   Dobbins v. Railway Co., 91 Texas, 61; Louthain v. Railway Co., 111 S. W., 666; Flores v. Railway Co., 66 S. W., 710; North Texas Con. Co. v. Bostick, 83 S. W., 13.   That English Barnes was a trespasser when and where injured and defendant not liable.   Railway Co. v. Shiflett, 11 Texas Ct. Rep., 488; Louthain v. Railway Co., 111 S. W., 666; Railway Co. v. Edwards, 90 Texas, 68; Oil Co. v. Martin, 70 Texas, 402; Railway Co. v. Crum, 25 S. W., 1109; Railway Co. v. Morgan, 92 Texas, 98; Dobbins v. Railway Co., 91 Texas, 60; Simonton v. Electric Co., 4 Texas Ct. Rep., 485; Barney v. Railway Co., 28 S. W., 1009; Railway Co. v. Davis, 110 S. W., 939; Williamson v. Railway Co., 88 S. W., 279; Simonton v. Electric L. & P. Co., 67 S. W., 530.

That English Barnes, the injured boy, was guilty of contributory negligence, which precludes a recovery and should reverse and render the case.   Preceding authorities and Railway Co. v. Porter, 73 Texas, 304; Railway Co. v. Martin, 21 Texas Civ. App., 208; Houston & T. C. Ry. Co. v. Scott, 62 S. W., 1077; Over v. M., K. & T. Ry. Co., 73 S. W., 535.

*G. L. Davenport* and *H. G. McConnell,* for defendant in error.— The evidence being conflicting, the verdict of the jury is conclusive in showing that neither the appellee nor his injured son were guilty of negligence; that the injured son was not a trespasser upon appellant's premises nor at the place where he was injured; and it conclusively establishes that appellant was guilty of negligence, entitling appellee to recover.   Elliott on Railroads, sec. 1249; Foster

v. Portland Gold Mining Co., 52 C. C. A., 393; Denison & P. S. Ry. Co. v. Harlan, 87 S. W., 732; San Antonio & A. P. Ry. Co. v. Skidmore, 65 S. W., 216; Waters-Pierce Oil Co. v. Snell, 106 S. W., 174; Dublin Oil Mill Co. v. Jarrard, 40 S. W., 531, 42 S. W., 959; San Antonio & A. P. Ry. Co. v. Morgan, 92 Texas, 98; Dobins v. M., K. & T. Ry. Co., 91 Texas, 60.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

Barnes, as plaintiff, brought this action to recover of the oil company, defendant, damages sustained by himself from injuries inflicted on his minor son, English Barnes, which he alleges to have been caused by negligence of the defendant. The occurrence out of which the action grew was one of those distressing ones shown by the reports to have become rather frequent, in which children have had their feet caught in conveyors used in such mills as that of the defendant. A brother, sixteen years old, of English Barnes, who was twelve years old, by direction of his father went on four different occasions to the mill of the defendant to buy cotton seed hulls, which were put in sacks and hauled home on a toy wagon belonging to the boys. The first two trips were made by the elder brother alone, but he was accompanied on the others by English, also by direction of the father, so the petition alleges, and it was upon the last that English was hurt. In going to the mill the boys entered the enclosure by which it was surrounded through a gate at its southeastern corner, their route taking them first by the office in the southeastern corner of the mill building. This office was kept by a clerk of the defendant, who, upon application made to him by the boys, upon each occasion except the last, for the purchase of hulls, directed them, according to his version, to go to the north end of the hull house, but according to theirs, merely to go to the hull house, and get them. The significance of the difference in their statements appears from the arrangement of the building. The part of the hull house in which the defendant kept hulls for sale was at the extreme north end of the building, where there was no machinery or other dangerous thing; but between the office and it, from the southern towards the northern end of the building, ran the conveyor, the construction and uses of which have been so often stated that description of it is unnecessary. In the eastern and western sides of the building, near its southern end, were large doors, opposite each other, between which extended a bridge, elevated in the center so as to pass above the conveyor. This bridge was made for the use of employes hauling hulls in dump carts to be thrown into the conveyor, and that this might be done conveniently, the boards forming its flooring just over the conveyor were put upon hinges in order to allow an opening through which the hulls could be dumped. Except that part thus described over the conveyor, the bridge was boxed up on each side so as to prevent mules used in hauling from getting off and to catch hulls that might fall from the carts. The evidence conflicts as to the arrangement immediately above the conveyor, employes of defendant testifying that there was a railing at each side of it and that the boards upon hinges were

the same length as the others in the floor, and the two boys stating that there was no railing and that the movable boards were shorter than the others in the floor, the effect of which was to leave holes about a foot long in the floor at the ends of these shorter pieces. West of the conveyor in this room were hulls which were not kept for sale, but were put to other uses by the defendant. On all occasions before that in question the boys, on receiving the direction from the clerk, had passed north from the office along the eastern side of the building, and coming to the eastern door of the hull house entered it, followed the bridge across the conveyor to the place where the hulls were, and, having filled the sacks, carried them back to the office, where they were weighed by the clerk and the hulls were paid for. On the last trip they said nothing to the clerk, and were not seen by him or any employe, but went at once to the place where they had previously gotten hulls and filled their sacks as before. English then walked to the part of the bridge over the conveyor and was watching it move, when, on being called by his brother and starting to go, he was "overbalanced," as he expresses it, and put his foot in the trough containing the screw, and was severely injured. Circumstances testified to by defendant's witnesses tend to show that the occurrence took place in a different way, but we must assume that the account of plaintiff's witnesses is the true one. There is no evidence that the clerk or any employe knew that, at any time, either of the boys had gone into this room, except that the elder brother says that at one of the times when he went alone an employe was working there and could have seen him. Both the boys knew of the presence of the conveyor, what it was, how it was arranged and that it was dangerous to allow the foot to be caught in it. The plaintiff, himself, knew that there was machinery in the mill dangerous to anyone caught in it, knew that conveyors were used about such establishments, but had no special knowledge of the arrangement of this one. There is evidence in the record as to the situation of the mill and the precautions taken by defendant to keep unauthorized persons off its premises, a statement of which is made unnecessary by the view taken of the case.

Before taking up the fundamental question raised by the defendant as to whether or not there is in the facts of this case any legal basis upon which its liability can be founded, we think it proper to notice particularly one of the instructions given by the trial court which is assigned as error. It is as follows:

"It was the duty of the defendant in the construction and operation of the machinery to exercise such prudence and care to prevent injury therefrom, as an ordinary prudent man would exercise; and in determining such negligence you should consider how the defendant's hull house and machinery were constructed and operated, what precautions were used to prevent persons from going about or coming in contact with said machinery, and the duty of said employes in said hull house, or in charge of said machinery."

It is true, as said by the Court of Civil Appeals, an instruction containing the same proposition was approved by this court in the case of Dublin Oil Co. v. Jarrard, 40 S. W., 531. That ruling was

not presented to this court for revision, and discussion of the principle it states was, in effect, pretermitted in the final opinion in that case. 91 Texas, 294. We think it is clearly in conflict with the principals laid down in San Antonio & A. P. Ry. Co. v. Morgan, 92 Texas, 98; Dobbins v. Missouri, K. & T. Ry. Co., 91 Texas, 60; Missouri, K. & T. Ry. Co. v. Edwards, 90 Texas, 65.

These cases repudiate the contention that the owner of premises is under any general duty, in putting and keeping thereon buildings and other structures used by them in their legitimate businesses, to exercise care to make them safe for the use of others, even children, coming thereon without invitation, authority or allurement.

In the case first cited it is said: "These cases (others referred to) rest upon the sound principle that where the owner makes such use of his property as others ordinarily do throughout the country there is not, in legal contemplation, any evidence from which a court and jury may find that he has invited the party injured thereon, though it be conceded that his property or something thereon was calculated to and did attract him."

That is very different from the proposition that the owner, after he has constructed and is keeping upon his premises machinery, or other thing, with which there is danger of contact resulting in injury to those coming thereon, may not make himself responsible for their coming and consequent injury by some course of conduct calculated naturally to bring it about. That he may is so well established that the proposition hardly needs to be stated; and hence, it is obviously true that there is a duty to abstain from such a course of conduct as that just stated, or else to take proper precaution to protect from injury those likely to be drawn into danger by it; and that the nonobservance of that duty, resulting in injury to one entitled to take advantage of it, is actionable negligence. Therefore it is, that the invitation, license or allurement of others to come upon one's premises may give rise to a responsibility on his part which, without such invitation, license or allurement, would not exist, for injuries sustained by them from dangerous things thereon against which he has not exercised ordinary care to guard them. It may be that that which an owner keeps upon his premises may, in itself, have such powerful attraction for children, or others incapable of exercising proper care for their own safety, as to give rise to the duty to which we refer; but that is not true of those things which the owners of property use in their ordinary businesses in the way in which men of ordinary prudence are accustomed to use them. All this is fully recognized in the opinions referred to, and in the Morgan case it is shown that the decisions in what are known as the "turntable cases" are not authority for the notion that any such general duty as that laid down in the charge under review rests upon owners of property, although they put it to uses which may involve danger to children or other persons who may come upon it without invitation, without authority and without enticement or allurement. The turntable decisions merely lay down the proposition that there is evidence of negligence to go to the jury in a combination of circumstances, consisting not only of the bare fact that such a

structure was kept, but also of the way in which it was kept, often out of sight of the owner and his employes, unguarded, unfastened and in a place where it was known, or should have been known, that children were attracted or would be attracted by it to go and play with it. We not only feel committed to that proposition by former decisions of this court, but we heartily agree with it.

The latest discussion of it which has come to our attention is in the case of Cook v. Railway Co., L. R. App. Cas., 1909, in which the decision was in line with those heretofore made in this State. But we can not agree that one who erects upon his own land an oil mill, or other like establishment for pursuing in the ordinary way one of the ordinary businesses of the country, is under a duty arising merely from the construction and use of the plant to adopt in advance safeguards against danger from his machinery to children who may intrude upon his premises. Such businesses, at least, do not belong to that class of things that are to be regarded as so attractive as to impose the duty of guarding against the entrance of persons not induced to enter by the owner in any of the ways indicated. The ground of liability recognized in such cases is invitation, enticement or authority given to the child to enter the premises, as in Dublin Oil Co. v. Jarrard, 91 Texas, 289, or else the failure to employ the care demanded by ordinary prudence to take care of the child after its presence and the danger of its being hurt have become known, as in Construction Co. v. Bostick, 98 Texas, 239, and Cook v. Navigation Co., supra.

The proposition in the charge, therefore, can not be admitted as broadly as it is stated. It is true that those who use premises for the purpose of transacting business thereon with the public thereby invite the public to come and deal with them and therefore owe to those accepting the invitation the duty of using ordinary care to make reasonably safe for their use the place or places assigned to such uses; but even this duty does not involve in its scope parts of the establishment to which the public is not invited. Hotel keepers do not invite guests to their engine rooms; nor do carriers invite passengers to the many places not fitted up for their use. If it had been an admitted fact that the plaintiff's sons were at a place included in the invitation to the public, implied in the character of defendant's business, it might have been held that the charge, although too broad to be abstractly correct, was right in its application to the case. But it takes no account of the questions of fact to be passed upon by the jury before the extent of the duty of the defendant could be determined. Without further discussion of the charge we proceed to a decision of the questions upon which the case depends.

The boys were not brought to the mill by its attractiveness, or because of any failure of its owner to guard it from intrusion, but were sent by their father upon business which he had the right to transact with the owner. The defendant had consented to deal with them and they were therefore of the class invited to come and do business with it. They were not expressly invited on the premises on their last visit, nor to the place where the danger was at any

time. But the previous reception of and dealing with them might be regarded as implying a continuing invitation to return whenever they desired to buy the defendant's goods; and while it was not in the mind of the defendant's employe that they should go to the place where the injury was received, the general instruction, to go to the hull house, might be regarded by a jury as calculated to induce them to stop, as they did, at the first point in that house where hulls were found. We think a jury could find that there was no such instruction as ordinary prudence would have dictated to one dealing with a child ignorant of, or incapable of properly avoiding, the danger it would incur in such a place. And it is this view of the case which to our minds presents the only serious question. It must not be forgotten that the boys had repeatedly been sent to this mill by parents who knew of the presence of dangerous machinery; that the elder was sixteen and the younger nearly twelve years of age; that both of them knew of the presence of the conveyor and the effect of getting the foot into it, and that English by his testimony shows that he had knowledge of the specific danger from which he suffered and knew that the simple way to avoid that danger was to keep his foot out of the conveyor. It is necessarily true, therefore, that it was not from lack of knowledge and experience, nor because of the absence of warning or restraint by defendant's employe, but from a mishap such as might be suffered by an adult as well as by one such as he, that the unfortunate boy suffered his injury. St. Louis S. W. Ry. Co. v. Shiflet, 94 Texas, 139. There was no wrong, at least none of which plaintiff can complain, in allowing the boy to come upon the premises and in dealing with him as directed by his parents. It must follow that there must have been some negligent treatment of him after he came in exposing him to danger which ought not to have been foreseen by plaintiff. That negligence must consist of sending him into a situation of danger of which he did not know or against which he was incapable of protecting himself. If he had been so wanting in knowledge and discretion as this supposes and his injury had resulted from that fact, there would be better reason for holding the defendant guilty of negligence which was the cause of such injury, whether the plaintiff would be in a position to be heard to complain or not. That is the character of the cases relied on, but this differs from them all in the fact that the boy knew the situation fully and how to avoid the danger. We do not mean that contributory negligence is to be charged to the boy as a matter of law, but that the omission of the defendant in not instructing and protecting him does not constitute actionable negligence, since he had the knowledge which instruction would have given him and knew how to avoid this particular danger. This knowledge, affirmatively shown and admitted, distinguishes this case from Cook v. Navigation Co., 76 Texas, 353, which refuses to hold as a matter of law that a child between thirteen and fourteen years of age has sufficient knowledge and experience to appreciate and avoid danger. Again, the defendant merely told him to get what his parents sent him to get, without giving him instructions so definite as to prevent him from going to the

place where the conveyor was. Hs father sent him to the mill where there was much dangerous machinery without instructing him at all. How can it be said that the defendant's omission was negligence without saying that the parents' omission was negligence of the same character and quality? We think there can be no good answer to that question and for that reason, as well as for that before given, that there was no negligence on the part of the defendant that caused the injuries, we must hold that plaintiff has no cause of action.

There seems to be a contention that the existence of the openings in the ends of the floor of the bridge exposing the conveyor, constituted a breach of the defendant's duty to keep its premises reasonably safe for those invited there on business, but the conclusive answer is that the condition existing was fully known to both boys, and the bridge, even if treated as a place to which they were invited to go, was safe enough to one knowing its condition. The injury did not result from any defect in the bridge, but from the fact that the boy went from the safe part of it to the only place where he could have been hurt.

*Reversed and rendered.*