GALVESTON, H. & H. R. CO. v. McLAIN.
(No. 7745.)

(Court of Civil Appeals of Texas. Galveston. Oct. 24, 1919. Rehearing Denied Dec. 11, 1919.)

1. RAILROADS ⬤═282(5)—EVIDENCE SHOWING KNOWLEDGE OF DEFECTIVE CONDITION CAUSING INJURY TO INVITEE.

In an action against a railroad by a warehouse company's employé caught on a sliver on a rail while engaged in moving a freight car on a side track, evidence held to show that plaintiff had full knowledge of the defect.

2. RAILROADS ⬤═275(1)—INJURIES TO PERSON MOVING CAR ON DEFECTIVE SIDE TRACK NOT ACTIONABLE.

Where warehouse company's employé aware of the condition of a side track was injured when in pushing a car a steel sliver on a rail caught his clothing and held him until the car, pushed against another, moved back upon him, the railroad was not liable for his injuries, though it had knowledge and failed to warn him.

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Action by Calvin McLain against the Galveston, Houston & Henderson Railroad Company. From judgment for plaintiff, defendant appeals. Reversed and rendered.

Baker, Botts, Parker & Garwood, of Houston, John L. Darrouzet, of Galveston, and McMeans, Garrison & Pollars, of Houston, for appellant.

James. B. & Charles J. Stubbs and F. Spencer Stubbs, all of Galveston, for appellee.

GRAVES, J. This is the second appeal to this court in this cause. Formerly it was here upon McLain's protest against an instructed verdict below for the railroad company. This time it comes upon the railroad company's complaint over a $7,500 verdict and judgment against it. Both litigants in their briefs now before us assert that the facts developed in the two trials below were essentially the same, and a full statement of them as first presented is found in this court's opinion, reported in 195 S. W. 292. The case as then presented to this court turned mainly on whether McLain was an invitee on the railroad track in doing the work he was engaged in when injured, or a mere licensee or trespasser, and on whether or not he was guilty of contributory negligence. It was held that the facts presented constituted him an invitee, and did not convict him of contributory negligence as a matter of law, but left that an issue for the jury. While this court then, after first finding the undisputed fact to be that McLain not only knew that the sliver that held him was there but had so known for some time before the ac-

cident, went further and said the matter of whether or not the railroad company was negligent in permitting it to remain there was for the jury, that question did not in fact particularly challenge attention because not pressed for consideration.

Upon the present appeal, however, it is made the principal issue; in other words, appellant now directly contends that it was not shown to be guilty of any actionable negligence toward McLain in allowing the railroad track to be in the dilapidated condition it was in with reference to low places and splintered rails, since he was an invitee thereon and had full knowledge of these defective conditions. This position is sustained, and as a consequence the judgment is reversed, and the cause is here rendered in appellant's favor.

As stated, the facts are conceded to be substantially the same as before and need not be again detailed at length; but as the appellee upon this trial attempted to explain more at length about his previous knowledge of the low places in and the slivers on the track, thereby creating some apparent discrepancies in details between his two versions, the essentials of the uncontroverted proof this time made may be briefly epitomized:

The railroad company's side track ran along Mechanic street in Galveston past the warehouse and platform of Stoltz & Peterson for whom McLain was working, and the company habitually placed cars for their use on this side track at some place adjacent to this warehouse. Beyond so placing them, the railroad company rendered no further service touching the cars, but Stoltz & Peterson's employés would then move them to the firm's conveyor or warehouse door to be unloaded. After a car was unloaded, it would be moved away so that another loaded car could be placed at the conveyor or warehouse door for unloading. On this occasion, as was customary when the empty could not be started with pinch bars, a "car puller"—or a drum and cable operated by electricity—was used, the loaded car being brought down against the empty one with sufficient force to start it, and, after it had rolled about 7 feet, several of the Stoltz & Peterson employés began pushing it, some from the side, and others, including McLain from a position on the track between the rails at the hind end. After they had thus pushed the empty about 7 or 8 feet, a sliver or splinter from one of the rails penetrated McLain's pants and held him until the loaded car, which had continued moving toward the empty car after bumping it, ran upon him; its movement having been accelerated just before reaching him by running down a low place in the track. The track and rails along where the accident occurred were in a dilapidated condition, in that the rails were splintered, with slivers sticking out from their sides, and the track was uneven from high and low places in it to such extent that it was a hard matter to move cars over it.

[1] This court must again find, and that upon his own direct and repeated admissions—corroborated to some extent at least by other testimony and by certain physical facts—that McLain at the time of and before his injury had full knowledge of these conditions.

It was shown by testimony, as well as through agreement of his counsel, that the appellee had sworn upon the former trial in 1916 to have seen and known the condition of the track and splinters there for some time before he got hurt. On the present trial, however, as above indicated, he went at length into the matter, at first qualifying this former admission about having seen the splinters there, indeed, flatly contradicting it; but on extended cross and redirect examination he thus finally concluded the whole subject:

"I testified I believe the first time, a little over a year ago, and also believe I testified the last time I testified in this case three or four months ago, that I knew that there were shivers and splinters on the rail, and that I had seen them there, those shivers and splinters on the rail, ever since I had been there. When I so testified I was trying to tell the truth. When I testified before that I had seen those splinters and shivers on the rail, on the ball of the rail, and had seen them there ever since I had been working for Stoltz & Peterson, and again testified to it at the last time, I was telling the truth. If I was telling the truth then and swore then that I saw the shivers and splinters on the rail, and also testified on the last trial, three or four months ago, that I had seen the shivers and splinters on the rail and had seen then there ever since I had been there, the reason I swear now that I had never seen the splinters there before that, before I got hurt, is I hadn't particularly noticed the splinters until that one had caught me. I had seen splinters and shivers along that track, the one that caught me I had noticed particularly, because it caught me and I could not get loose from it.

"I remember telling you 20 or 30 minutes ago about seeing this bad track there and remember noticing this splinter there that had me, because it had me. I testified about 30 minutes ago that I noticed before I got hurt the high and low places of the rail, but that I had never seen or noticed any splinters or shivers on the ball of the rail, or side of the rail, until I got hurt. I testified that just awhile ago. I testified twice before that I had seen shivers and splinters on the ball of the rail ever since I had been there. In answer to your question, 'If you testified before that you had seen the shivers and splinters on the side of the ball of the rail ever since you had been working for Stoltz & Peterson, and you stated just now that that was the truth, then were you telling the truth when you testified about 30 minutes ago that you had never seen any splinters or shivers

on the ball of the rail until you got hurt, which one is the truth?' I answer, 'It is all the truth.'"

Redirect examination:

"I saw a splinter when I got hurt, the one that had me. It is true that I did get hurt. I seed the splinters on the rail at the time I had my leg. I seed it then and weeks before then, and months before then I had seen them. I had seen the bad track. I had not seen them that morning, but before that I had seen them, but I hadn't seen it that morning, but I did see it that morning because I got caught on it. I mean I seed that splinter that morning after it had me down and I was trying to get loose, after it had me and throwed me down, but not before that day, that morning, I didn't see any splinters there, I hadn't noticed them.

"I had been working there two months. I had an opportunity to see the condition of the track, a chance to see the condition of the track; but I had never noticed the track. I had a chance to see the track because I was out there every day and every hour. My attention was directed chiefly to my work."

[2] If then, despite its irreconcilability in some respects, the only reasonable appraisement of his entire testimony is that the appellee—whether it dominated his consciousness at the very time he stepped behind and began pushing the empty car or not—did have full advance knowledge of the defective conditions he founds his cause upon, as we have concluded it is, could he—sustaining only the relation of an invitee upon its track—nevertheless recover damages against the railroad company resulting as a consequence of its merely permitting him to come upon and use the track in the dilapidated condition he knew as much about as it did? We think not, concluding rather that a case of actionable negligence is not shown.

In these circumstances the rule of liability to an invitee, as we conceive it, is thus stated in 20 Ruling Case Law, § 52, under the heading, "Invitees—Duty to Persons on Premises by Invitation":

"Sec. 52. The mere ownership of land or buildings does not render one liable for injuries sustained by persons who have entered thereon or therein; the owner is not an insurer of such persons, even when he has invited them to enter, nor is there any presumption of negligence on the part of the owner or occupier merely upon a showing that an injury has been sustained by one while rightfully upon the premises. The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to the person going upon the property. It is when the perilous instrumentality is known to the owner or occupant, and not known to the person injured, that a recovery is permitted. In the language of Mr. Justice Harlan (Bennett v. Louisville, etc., R. Co., 102 U. S. 577, 26 L. Ed. 235), 'The owner is liable to invited persons for injuries occasioned by the unsafe condition of its approaches if such condition was known to him and not to them, and was negligently suffer-

ed to exist without timely notice to the public or to those who were likely to act upon such invitation.'"

See, also, Caniff v. Blanchard Navigation Co., 66 Mich. 638, 33 N. W. 744, 11 Am. St. Rep. 541; Stamford Oil Mill Co. v. Barnes, 103 Tex. 409, 128 S. W. 375, 31 L. R. A. (N. S.) 1218, Ann. Cas. 1913A, 111; Wells v. W. G. Duncan Coal Co., 157 Ky. 196, 162 S. W. 821; Stevens v. United Gas & Electric Co., 73 N. H. 159, 60 Atl. 848, 70 L. R. A. 120; O'Donnell v. Patton, 117 Mo. 13, 22 S. W. 905; 1 Thompson, Negligence, § 968.

Under this rule, even if it be held that the railroad company was chargeable—from the mere fact of owning and furnishing it for the purpose used—with knowledge of the precise condition of the dilapidated track, it still may not be said, under the fact findings we have made, that it occupied any position of vantage over the appellee in that respect, or that it had any superior knowledge of the perilous instrumentality he was about to use, or of the danger that use might entail, because he too admittedly knew the same thing.

Neither would a failure to warn under the facts here presented make any difference, for our own Supreme Court, in the Texas case cited, Oil Mill Co. v. Barnes, 103 Tex. at page 415, 128 S. W. 378, 31 L. R. A. (N. S.) 1218, Ann. Cas. 1913A, 111, says:

"We do not mean that contributory negligence is to be charged to the boy as a matter of law, but that the omission of the defendant in not instructing and protecting him does not constitute actionable negligence, since he had the knowledge which instruction would have given him and knew how to avoid this particular danger."

In this instance, while that part of the record has not before been referred to, it was undisputedly and conclusively shown that the appellee knew how and might easily have avoided the danger here by simply pushing the car from the side as other of his colaborers did, instead of getting behind it and between the rails for that purpose, as he himself did.

No case has been cited holding a recovery to an invitee permissible when the condition of the premises causing his injury was fully known to him, and we apprehend that none can be. Those cited and relied upon by the appellee have application to different states of fact and relationship, as for instance G., C. & S. F. Ry. Co. v. Gasscamp, 69 Tex. 545, 7 S. W. 227, and Dooley v. Ry. Co., 50 Tex. Civ. App. 298, 110 S. W. 135.

In the first of these, Gasscamp was not an invitee upon private property of the railway company using its facilities under any kind of inducement from it, but was a traveler over a public road, of which a bridge required by the state law to be kept in safe

condition by the railway company was a part, and his action was founded upon a violation of that statutory duty to himself as a member of the public. In Dooley's Case, the railway company itself inflicted the injury upon him by negligently and violently propelling others of its cars, with which he had no connection and of which he had no knowledge, against a standing fruit car he was unloading from within; it having placed the car on a side track for that particular purpose.

Obviously, the same principle could not rule these two cases as does the one at bar. Many of the others presented by the appellee have to do with the question of contributory negligence, a discussion of which would be wholly academic, if in the first instance no actionable negligence was brought home to the appellant.

From these conclusions it follows that no fact issue was left for the jury, whose findings accordingly became immaterial. The judgment is reversed, and the cause is here rendered for the appellant.

Reversed and rendered.