## TEXAS–MEXICAN RY. CO. et al. v. GARCIA. (No. 6281.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 17, 1919.)

NEGLIGENCE ⚌33(3)—CHILD UNDER RAILROAD WAREHOUSE TRESPASSER.

A boy who of his own accord crawls under a railroad's warehouse to see animals unloaded from a circus train attracting him to the place is a trespasser, and the railroad is not liable for his death by the collapse of the building caused by its insecurity and the presence of people on top of it.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Suit by Eleuteria Garcia against the Texas-Mexican Railway Company and others. Judgment for plaintiff, and defendants appeal. Reversed and rendered.

Robt. W. Stayton and Pope & Sutherland, all of Corpus Christi, E. H. Crenshaw, Jr., of Kingsville, and Dodson & Smith, of Laredo, for appellants.

W. L. Dawson, of Mission, and Anderson & Smith, G. R. Scott, and Boone & Pope, all of Corpus Christi, for appellee.

FLY, C. J. Appellee instituted this suit against the Texas-Mexican Railway Company, Frank Andrews, receiver of the St. Louis, Brownsville & Mexico Railway Company, the last-named company, and W. G. Hines, Director General of Railroads, to recover damages for the death of her son, Vicente Garcia, who was killed by the collapse of a building alleged to be the property of the Texas-Mexican Railway Company. The negligence alleged was the insecurity and unsafe condition of the house, and the vibration caused by the passage of a train operated by the St. Louis, Brownsville & Mexico Railway Company, which caused the building to fall. The cause was tried by jury and resulted in a verdict and judgment for appellee against the two railway companies in the sum of $1,200.

---

⚌For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

It appears from the evidence that on October 30, 1915, a train transporting a circus was being unloaded in Corpus Christi, and a large number of the inhabitants had gathered at the landing place along the railroad track to watch the unloading of the circus animals and other property. Where the property was to be unloaded, there was a frame building between two tracks, which had been erected, probably by lessee of the Texas-Mexican Railway Company, and its foundation consisted of posts or poles placed in the ground. Three or four engines were switching cars about on the tracks. The show train was on the south side of the track, when without warning the house, which was being used as a warehouse and was at the time filled with merchandise and covered by people, careened and fell towards the north away from the show train. Two Mexican boys, the sons of appellee, had crawled under the warehouse and were on the side next to the show train when the house fell and caught them. Vicente Garcia, one of the boys, was killed. He was 15 years old. The other boy was not injured. The boys went under the house to watch the circus train. The house was on posts about five feet high, and the posts were not large or heavy ones. There were seven or eight boys under the house when it fell, and two were killed. The boys had approached too close to an elephant, and they were told by some one connected with the circus to move off, and they then went under the house. The train was standing on the track south of the warehouse at the time the house fell. The circus train was being handled by the St. Louis, Brownsville & Mexico Railway Company. The train did not strike the building and was not moving at the time the house fell. At that time, the house was leased to and controlled by the Rankin, Crain & Hill Company, and had been for about five years. It was not used by the Texas-Mexican Railway Company. The evidence fails to show that deceased and the other boys were known by either of the appellants to be under the house or had held out any inducements for them to be there. The attraction for the boys was a circus, which was brought to Corpus Christi by a railway company which did not own the warehouse and which was not shown to be acquainted with its condition. The circus was very unusual for Corpus Christi, the testimony tending to show that nothing like it had ever before visited that place. Slats had been placed between the posts supporting the house, but the boys must have crawled between the slats. The evidence showed that the house was not struck by a car or locomotive. There was no evidence that under the warehouse was attractive or alluring to children, or that any child had ever before been under the house.

Under the earlier decisions in Texas, such as Evansich v. Railway, 57 Tex. 123, 125, it was held that where a dangerous machine or appliance is erected in a public place, that children, with the knowledge of the owner, were accustomed to play on or about the dangerous structure, and one was injured by such structure while thereon or thereabout, the owner would be liable in damages. The ruling in that case and others that have followed it have been sharply criticized in several of the states, and it has been more fully explained in Texas. The rule is thus stated by Chief Judge Gaines in the case of Railway v. Edwards, 90 Tex. 65, 36 S. W. 430, 32 L. R. A. 825:

"Ordinarily the owner of property is not bound to keep it in such condition as to protect trespassers upon it from danger."

The court further showed that the turntable cases proceeded upon the ground that those appliances are attractive to children and that the use of them by children for purposes of play was known to the employés of the owners. The idea was that the attractiveness of the turntables was so great as to amount to an invitation to children to resort to them for purposes of amusement, or that unsecured they were so obviously dangerous to children that, with a knowledge of their use by children, it would be negligence on the part of the owner not to take steps to protect the children.

In the Edwards Case, the negligence alleged was the keeping of a yard in which children were accustomed to play and piling railroad ties in such a way that they fell upon and injured a child, and the court said:

"We do not see that a yard kept by a railroad company for the deposit of old ties and other rejected material, or new material for railroad repair and construction, possesses any greater attraction for children than any other place of deposit of any similar material kept by people pursuing other avocations. * * * There was. no peculiar allurement about the yard of the defendant company."

In the case now before this court, not only does the proof fail to show that there was anything under the house alluring, but it is clear that it was the elephant and not the house that attracted the boys, and they were making use of it merely to be in proximity to the animals along with the circus. It was not shown that any child had ever been under the house before, and there were no circumstances to give notice to the owner that children would crawl through the slats about the lower part of the house in order to get a view of the elephant. Men, women, and children do not usually crawl under houses to see a circus train, but frequent house tops and other high places.

In order to fix the liability of the owner of dangerous attractive machines or appliances which may entice and allure children to re-

sort to them, for injuries inflicted by such machines or appliances, there must be an invitation to use them either express or implied. If the child enters the premises without such invitation, he is a trespasser, and the owner owes him no duty except not to intentionally injure him. These rules were enunciated in the case of Railway v. Morgan, 92 Tex. 98, 46 S. W. 28, and it was held:

"In so far as the turntable case and other cases involving injuries upon dangerous machinery or private property may be considered to lay down the broad proposition that the owner can be held liable without proof of either an intent to injure or an invitation, as these have been above explained, we do not think them based upon sound principle."

It has never been asserted that an owner is liable to a trespasser for injuries received through defects of houses or other property on such owner's land, to which the injured person has not been invited expressly or impliedly but to which he has gone of his own accord. If, under the facts of this case, persons had come to the warehouse for the purpose of obtaining merchandise or for any other purpose connected with the business of the railroad company and the house had fallen and injured them, the owner of the house might be liable, for it is the duty of the owner who deals with the public to use ordinary care to make his premises safe for those invited to come to them to transact business; but this would not include parts of the premises where the public is not invited, such as under a house. Stamford Oil Mill Co. v. Barnes, 103 Tex. 409, 128 S. W. 375, 31 L. R. A. (N. S.) 1218, Ann. Cas. 1913A, 111. It is the settled law of Texas that the owner of premises is under no general duty to exercise care to make them safe for the use of those entering upon them without invitation, authority, or allurement. City of Greenville v. Pitts, 102 Tex. 1, 107 S. W. 50, 14 L. R. A. (N. S.) 979, 132 Am. St. Rep. 843; Denison Light Co. v. Patton, 105 Tex. 626, 154 S. W. 540, 45 L. R. A. (N. S.) 303.

The evidence clearly showed that Vicente Garcia was a trespasser when he went under the house. It did not appear that minors had ever been there before. The only duty the railroad company owed him was to do him no willful or wanton injury, and, while it might be the duty of the railroad company to keep a lookout for any one on its track, it could not be called upon to search for persons under its buildings or other out of the way places. Being a minor could not alter this rule, in the absence of any proof that he was invited, enticed, or allured into the place occupied by him when he was injured or killed. There was no testimony tending to show that either of the appellants had any knowledge that the boys were under the house, and the evidence indicates that they crawled between slats to get under the house. No one testified to seeing the boys under the house before the house fell.

There was no evidence tending to show that the warehouse was struck by passing cars, but the evidence indicates that the collapse of the building was caused by a large number of persons getting on top of it and on the platform attached to it. The evidence utterly fails to show that the death of Vicente Garcia was the result of negligence upon the part of either of the appellants.

The judgment is reversed, and judgment here rendered that appellee take nothing by her suit and pay all costs in this behalf expended.

---

⬤➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes