## GALBRAITH–FOXWORTH LUMBER CO. v. GERNETH et ux. (No. 12185.)

Court of Civil Appeals of Texas. Fort Worth.
Oct. 5, 1929.

Rehearing Denied Nov. 2, 1929.

Underwood, Johnson, Dooley & Simpson, of Amarillo, and Garnett & Garnett, of Gainesville, for appellant.

R. R. Bell, of Oklahoma City, Okl., and W. S. Moore, of Gainesville, and H. L. Stuart, of Oklahoma City, Okl., for appellees.

DUNKLIN, J. The Galbraith-Foxworth Lumber Company has prosecuted this appeal from a judgment against it in the sum of $1,500 in favor of Otto Gerneth and his wife, Mabel Gerneth, as damages sustained by them in the loss of services of their minor child, D. C. Gerneth, resulting from injuries sustained by the child when he was caught in an ascending freight elevator owned by the defendant company.

The defendant owned a lumber yard situated between Broadway and Elm streets in the city of Gainesville, fronting north on Broadway, and extending south through the block to Elm street. The lumber yard was inclosed, but at the Broadway entrance there was a driveway extending into and through the lumber yard which the defendant provided for the purpose of driving vehicles into the yard and there loading and unloading lumber and other material handled by it in its business. Gates were provided to close the openings to the driveway, but usually they were left open during the day.

Inside the defendant's plant an elevator was provided for the purpose of carrying material to the attic above the main floor and bringing down material therefrom. The elevator fronted on one side of the driveway, and the floor of it was flush with the floor of the driveway and about one foot distant therefrom whenever it was down. The elevator was operated through the means of two ropes which hung down by the side of it, reaching the floor; one of which was what

is called a brake rope, used to release the brake, and the other was to pull the elevator up after the brake was released. When there was no load, or very little weight, upon the floor of the elevator, it would sometimes ascend when the brake was released by pulling the brake rope, without pulling on the other or hoist rope, but with a load on the elevator it was necessary to pull the hoist rope after the brake was first released. The elevator was back 25 feet from the south line of Broadway street, and was constructed as such elevators are usually constructed.

Plaintiffs lived on Broadway street about 300 feet distant from the lumber yard. They had two small children, one of whom was D. C. Gerneth, the boy that was injured, who was a little past the age of three years, and the other about the age of five. Those two children were in the habit of straying from home, and on two or three occasions prior to the accident had strayed into the driveway running through defendant's plant, and, when discovered, they were at once required to leave the premises by any of defendant's employés who might happen to discover their presence. Other children in the neighborhood were in the habit of passing through the driveway on their way to school.

On the day of the accident, one of defendant's employés discovered plaintiffs' two children in the driveway, and told them to leave, which they did, and that employé watched them until they reached the street crossing, where they headed towards home. Later in the day, the children returned, and without the knowledge of any of defendant's employés went into the driveway, and D. C. Gerneth got aboard the elevator, and one of the children pulled the brake rope. When he did so, the elevator ascended, and, as it went up, the child's leg was caught between the floor of the elevator and the joist supporting the floor of the attic above, some 10 or 12 feet above the floor of the driveway, and by reason thereof the child's leg was broken and he sustained other injuries. The child did not cry out, but employés of the defendant heard the elevator moving, and, upon going out to see the cause thereof, discovered the child fastened against the upper joist, and released him by sawing out a part of the elevator floor. The injury so sustained by the child was the basis of the judgment rendered in plaintiffs' favor.

The allegations of negligence presented by plaintiffs and upon which the judgment was based were embodied in the following three special issues, with the findings of the jury thereon, to wit:

"1. Was the elevator on which the child D. C. Gerneth was injured in the place and in the condition it was kept at the time especially and unusually attractive to children of the age of said D. C. Gerneth? Answer: Yes.

"2. Was the defendant guilty of negligence as that term is above defined in keeping and maintaining the elevator at the place where and in the condition it was at the time of the injury? Answer: Yes.

"3. Was such negligence, if any, of the defendant the proximate cause of the injury to the child? Answer: Yes."

Plaintiffs introduced testimony to the effect that the door or opening into the elevator could have been equipped with a guard at a cost of some $60, which would have served to exclude entrance into it when not in use.

No testimony was introduced to show that any child had ever before gone into the elevator as did plaintiffs' child on the occasion of its injury, and the uncontradicted testimony of defendant's employés present at the time at the plant was that the presence of plaintiffs' two children in the driveway on the occasion of the accident was not known to any of them until the accident happened.

The evidence further showed that Gainesville has a population of ten or twelve thousand inhabitants, and that several residences are located in the vicinity of defendant's lumber yard, which is also near the business part of the city.

The finding of the jury in answer to the first question propounded to them, to the effect that the elevator "in the place and in the condition it was kept at the time was especially and unusually attractive to children of the age of said D. C. Gerneth," was based solely upon the facts recited above as to the manner of its construction, equipment, and location.

At the conclusion of the testimony, the defendant requested the trial court to instruct a verdict in its favor, and the refusal of that request is assigned as error.

In order to establish a cause of action against defendant, the burden was upon the plaintiffs to show, first, a duty owing by defendant to exercise ordinary care to protect plaintiffs' child from the danger which resulted in his injury; and, second, a failure on the part of defendant to discharge that duty. See S. A. & A. P. Ry. Co. v. Morgan, 92 Tex. 98, 46 S. W. 28.

What are known as the turntable cases furnish a true type of those in which it is held that, aside from any statutory requirement, one who maintains on his own premises a structure or any other agency which is peculiarly attractive to children of immature age and discretion for use in playful amusement owes a common-law duty to take proper precautions to prevent such use or else to prevent injury therefrom, and that a failure to discharge that duty is actionable negligence in a suit for damages resulting by reason of injuries sustained in such use, even though the child is technically a trespasser upon the premises. In many of the decisions it is said, in effect, that, when the owner maintains such an agency, and under such circumstances as that it may be reasonably anticipated that such a use may probably be

made of it, then a jury may find that the owner has invited such use.

But in United Zinc & Chemical Co. v. Britt, 258 U. S. 268, 42 S. Ct. 299, 66 L. Ed. 615, 36 A. L. R. 28, the following was said in the majority opinion:

"On the other hand the duty of one who invites another upon his land not to lead him into a trap is well settled, and while it is very plain that temptation is not invitation, it may be held that knowingly to establish and expose, unfenced, to children of an age when they follow a bait as mechanically as a fish, something that is certain to attract them, has the legal effect of an invitation to them although not to an adult. But the principle if accepted must be very cautiously applied."

To the same effect are the decisions in Sioux City & P. R. Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745, and Union P. R. Co. v. McDonald, 152 U. S. 262, 14 S. Ct. 619, 38 L. Ed. 434. In each of those cases recovery was upon findings of negligence on the part of the railway company in maintaining turntables without taking proper precautions to protect from injury children who might be attracted thereto for amusement, and that it was no defense to the action that the child injured was a trespasser, and that leaving the turntable open to use with its attraction to children for such use amounted to an implied license to so use it.

It is our conclusion that it is not necessary to imply an invitation to such use in this character of cases, since the recovery in such cases is based on the alleged negligence of the defendant, and since a right of recovery is established if the negligence is proven and it is found from the evidence that the injury was the natural and probable consequence of such negligence, and that, in the light of the attendant circumstances, a reasonably prudent person in the same situation as that of the defendant would have anticipated some like injury as such a result. T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162. And to the same effect is Flippen-Prather Realty Co. v. Mather, 207 S. W. 121, by the Court of Civil Appeals (writ of error denied).

As shown by the decisions of our Supreme Court in the Morgan Case, cited above, and other decisions such as M., K. & T. Ry. Co. v. Edwards, 90 Tex. 65, 36 S. W. 430, 32 L. R. A. 825; Dobbins v. M., K. & T. Ry. Co., 91 Tex. 60, 41 S. W. 62, 38 L. R. A. 573, 66 Am. St. Rep. 856; Stamford Oil Mill v. Barnes, 103 Tex. 409, 128 S. W. 375, 31 L. R. A. (N. S.) 1218, Ann. Cas. 1913A, 111, the doctrine of liability in turntable cases is adhered to, to the effect that liability of the defendant in such cases is based on the common-law duty of the railway company to take proper precautions to avoid injury to children from using turntables for their amusement when they have free access thereto, and on the failure of the railway company to discharge that duty. To the same effect see N. T. Const. Co. v. Bostick, 98 Tex. 239, 83 S. W. 12.

But in the decisions of our Supreme Court in the cases cited above, and particularly in Stamford Oil Mill Co. v. Barnes, 103 Tex. 409, 128 S. W. 375, 31 L. R. A. (N. S.) 1218, Ann. Cas. 1913A, 111, it is held that, where one who erects upon his own premises buildings or other instrumentalities for the transaction of an ordinary business of the country in the ordinary way, he is not required by law to adopt safeguards to protect from injury children of immature age who may intrude themselves upon the premises without invitation or consent of the owner, even though such places are peculiarly attractive to such children; and, in the absence of such legal duty, there is no basis for a finding of actionable negligence in failing to provide such safeguards. That announcement and the distinction so made has never been reversed nor modified by our Supreme Court in any subsequent decision, and must be given controlling effect in the case at bar.

No proof was offered to show that plaintiffs' injured child had even seen any one operate the elevator by pulling the ropes provided therefor, and that in pulling on the brake rope he was attempting to operate it, or was merely toying with the brake rope as a plaything. If he was merely using it for the purpose of amusement, then it is doubtful that a jury would be warranted in finding that a hanging rope on the wall of the elevator was naturally so attractive to such a child as to tempt him to pull on it, and that the defendant should reasonably have anticipated such use and of probable injury to a child therefrom as would have been true if the rope had been a turntable or other dangerous agency of that class, and the child had been injured in attempting to use it. But aside from that question, and assuming for the sake of argument that the rope came within that class of dangerous agencies, yet under the decisions noted above we conclude that defendant owed no legal duty to provide a guard at the door of the elevator in order to prevent a trespassing child from entering thereon and pulling at the brake rope as did plaintiffs' child, and that therefore there was no basis for a finding of negligence which would support a recovery, since the undisputed facts show conclusively that defendant's business in maintaining a lumber yard was one of the ordinary businesses of the country, and conducted in the usual manner, as was the Stamford Oil Mill in the case of Stamford Oil Mill Co. v. Barnes, supra.

Appellees have cited many decisions to support the judgment, including the following: McCoy v. Tex. Power & Light Co. (Tex. Com. App.) 239 S. W. 1105; Charles v. El Paso Elec. Co. (Tex. Com. App.) 254 S. W. 1094; Flippen-Prather Realty Co. v. Mather (Tex. Civ. App.) 207 S. W. 121.

In McCoy v. Tex. Power & Light Co., opinion by the Commission of Appeals, reported in 239 S. W. 1105, the court sustained a recovery for the death of a boy, resulting from contact with an electric current carried by high-power wires suspended over the farm of the boy's father, with no safeguard to prevent a boy from following the well-known propensities of a boy of the age of the one killed to climb such structures as those supporting the wires by way of amusement.

In Charles v. El Paso Electric Co., 254 S. W. 1094, by the Commission of Appeals, recovery against the defendant company for injury was sustained as the result of contact with obstructions partly on the sidewalk, placed there by the defendant while the person injured was passing along the sidewalk.

In Flippen-Prather Realty Co. v. Mather (Tex. Civ. App.) 207 S. W. 121, a recovery was allowed for the drowning of a seven year old boy in an open well on an uninclosed lot owned by the defendant, situated near the public school grounds, and on which the school children were accustomed to play; the boy having fallen into the well while playing around its edges.

We believe that those decisions, as well as others cited, are distinguishable from the case at bar by reason of the different facts on which recoveries were allowed.

Accordingly, appellant's assignment of error to the refusal of the trial court to instruct a verdict in its favor is sustained, the judgment of the trial court is reversed, and judgment is here rendered that appellees take nothing of defendant, and that the costs both in this court and in the court below be taxed against them. And, by reason of the conclusion so reached, other assignments of error will not be considered because it is unnecessary to determine their merits.