SCHMIDT *et al.* v. THE KANSAS CITY DISTILLING COMPANY, *Appellant.*

1. **Negligence** : OWNER OF PROPERTY: DUTY AS TO KEEPING IT IN SAFE CONDITION. The owner of property is under no obligation to keep it in a condition which will insure the safety of persons who go upon it without license or invitation.

2. ———— : ———— : PLACE ATTRACTIVE TO CHILDREN. An exception to the above rule exists where the owner permits upon his premises dangerous machinery or other dangerous things likely to attract children and does not place guards around the same so as to prevent injury to such children.

3. ———— : ———— : ————. The defendant was a corporation engaged in buying, selling and refining grain, and for that purpose maintained distillery buildings containing steam engines and boilers. The child for whose death the action was brought lost its life by having fallen into a pool of hot water made by a discharge of the water on to its premises from its boilers through an escape pipe. *Held,* that the evidence did not show that the place at which the child lost its life was attractive to children and the defendant, therefore, could not be held liable for its death.

Schmidt v. The Kansas City Distilling Company.

4. ——: PLEADING. The petition should have averred either that the place where the child lost its life was attractive to children by reason of the escape pipe discharging the boiling water there, or that children in the neighborhood were in the habit of resorting there to play, or to witness the escape of the water and steam from the pipe.

5. Practice in Supreme Court: REMANDING CAUSE. The cause remanded to enable plaintiff to so amend his petition as to charge that the place where the child so lost its life was attractive to children, or that, to the knowledge of defendant, children were in the habit of resorting to it for amusement or otherwise.

*Appeal from Jackson Circuit Court.*—HON. T. A. GILL, Judge.

REVERSED AND REMANDED.

*Gage, Ladd & Small* for appellant.

(1) The petition failed to state a cause of action and the court erred in overruling defendant's objection to the hearing of evidence under it. It does not state any case of wilful or wanton injury, or of interference with the rightful use by individuals of any public place, or any fact whatever, except that the defendant's premises and its use of them for blowing off its boilers was dangerous, and that the child was injured. *Keffe v. Railroad*, 21 Minn. 210. (2) The court erred in refusing to instruct the jury that upon the evidence the plaintiffs could not recover and that the verdict must be for the defendant. The evidence utterly failed to sustain the very defective charge of negligence contained in the petition. No duty is imposed on the owner or occupant to keep his premises in a suitable condition for those who come there solely for their own convenience or pleasure, and who are not expressly invited to enter, or induced to come upon them by the use for which the premises are appropriated and occupied, or by some preparatory adaptation of the

place for use by customers or passengers, which might naturally and reasonably lead them to suppose that they might properly and safely enter. . *Straub v. Soderer*, 53 Mo. 38; *Hughes v. Railroad*, 66 Mo. 325; *Turner v. Thomas*, 71 Mo. 596. (3) In cases of recovery for injuries resulting from turn tables, spring guns and the like, the defendants had knowingly constructed and maintained devices dangerous to children and liable to do them serious injury. In the case at bar the defendant had not knowingly made or maintained the pool of water; it did not know it was likely to attract children, for it did not know of its existence. (4) The court erred in instructing the jury as to the measure of damages; the instruction should specify the particular kind of loss which the case shows. (5) The verdict is clearly and grossly excessive.

*Wash Adams* and *H. Stubenrauch* for respondent.

(1) The petition was sufficient; having stated the facts that were necessarily in the knowledge of the defendant, the proximity of the inhabited dwelling houses, the public road, etc., it was hardly necessary to plead the mere inference and conclusion that "defendant had knowledge, or ought to have had, that children were likely to resort to them." These inferences follow from the facts stated, and were expressly embodied in the instructions given by the court. The rule in this state is, that it is not necessary to set out the facts constituting negligence. The act complained of may be alleged generally as negligently done. *Mack v. Railroad*, 77 Mo. 232; *Schneider v. Railroad*, 75 Mo. 295; *Edens v. Railroad*, 72 Mo. 213; *Bailey v. Culver*, 12 Mo. App. 168. (2) The defendant by its own instruction caused the court to submit the issue as to the negligence of defendant in keeping premises which were "so attractive and alluring to children of the age of the deceased as

to induce them to go about them," and the finding of the jury on said issue being adverse to defendant it is too late for it to complain of the defectiveness of the petition in respect to said issue. *Jones v. White*, 90 Ind. 255; 67 Mo. 313; 64 Mo. 255. (3) Even if the petition were defective in its charges of negligence the point could not be raised by an objection to the evidence, nor by an instruction; the only question which could be raised in such manner was whether the petition was fatally and wholly defective as to some element constituting a cause of action. *Roberts v. Walker*, 82 Mo. 206. (4) The trial court did not err in refusing defendant's instructions numbered two and three. 81 Mo. 483; *Zimmerman v. Railroad*, 71 Mo. 491. (5) The evidence sustains the verdict; the pipe discharging water was attractive to children, and this was not all, for the pipe was also "a dangerous thing," "a concealed source of mischief," and "in the nature of a trap." Wharton on Negligence, secs. 851, 860, 350; *Hydraulic Co. v. Orr*, 2 Norris, 432; *McGarry v. Loomis*, 63 N. Y. 104; *Whirley v. Whiteman*, 1 Head. (Tenn.) 610; *Birge v. Gardner*, 19 Conn. 507; *Beck v. Carter*, 68 N. Y. 283; *Kefte v. Railroad*, 21 Minn. 211; *Lobenstein v. McGraw*, 11 Kan. 645; *K. C. W. Co. v. Fitsimmons*, 22 Kas. 691; *Copner v. Pa. Co.*, 12 Brad. (Ill.) 680; *Crafton v. Railroad*, 55 Mo. 580; *Fink v. Furnace Co.*, 10 Mo. App. 61; 1 Thompson on Neg. 304; *Branson v. Labiot*, 81 Ky. 638. (6) The court did not err in instructing as to the measure of damages. *Nagel v. Railroad*, 75 Mo. 653; *Owen v. Brockschmidt*, 54 Mo. 289. (7) The verdict is not excessive. *Houghkirk v. Co.*, 92 N. Y. 223; *Iba v. Railroad*, 47 N. Y. 321; *Railroad v. Keller*, 67 Pa. St. 306; *Owen v. Brockschmidt*, 54 Mo. 289; *Railroad v. Shannon*, 43 Ill. 340; *Grotenkemper v. Harris*, 25 Ohio St. 510. The verdict should not be disturbed for excessive damages. *Goetz v. Ambs*, 27 Mo. 34; *Graham v. Railroad*, 68 Mo. 544.

HENRY, C. J.—The plaintiffs are husband and wife and parents of a child three years old, Louisa, whose death occurred November 2, 1883, upon the premises of the defendant, and plaintiffs allege that it was caused by the negligence of the defendant.

The petition is as follows: "Plaintiffs state that they are now, and were, at and prior to the date hereinafter mentioned, husband and wife, and father and mother of Louisa Schmidt, their child, born on the twenty-ninth day of October, 1879. Said Louisa Schmidt was killed in the manner hereinafter stated, and at the time of her death was a minor and unmarried. That the defendant now is, and was, at and prior to the dates hereinafter mentioned, a business corporation, duly organized as such under and by virtue of the laws of the state of Missouri, and engaged in the business of buying and selling and refining grain, and for that purpose kept and still keeps and maintains distillery buildings, and in connection with said buildings, and in its business, defendant erected and maintained, and was, at the time hereinafter stated, using a large number of steam engines and boilers, to-wit, six, in the county of Jackson, and state of Missouri, east of and near the City of Kansas; that the defendant, on and prior to the second day of November, 1882, kept and maintained an escape pipe in connection with said boilers for the purpose of blowing off hot water, debris and steam from the same; said pipe extended from the distillery, where the boilers were, under and across a traveled public road and highway, and terminated above ground in an open space about sixty feet north of said traveled public road. Through this pipe defendant, from time to time, as occasion required in its business, blew off and discharged hot and boiling water, debris and steam from said boilers; and said water, steam and debris were discharged and thrown upon open ground and about sixty

feet north of said traveled public road, and in the neighborhood and vicinity of several inhabited dwelling houses along said road. At the end and outlet of the pipe where the boiling water, debris and steam were blown off and discharged, there was no fence, guard, signal or protection of any kind, but the same was left exposed, open and unguarded.

"Plaintiffs say defendant wrongfully and negligently kept and maintained said pipe, as aforesaid, and wrongfully and negligently left the end and outlet thereof contiguous to said public road unprotected, and in an exposed, open and dangerous condition, and wrongfully and negligently, while said pipe was so unprotected, discharged from time to time hot and boiling water, debris and steam through the same onto the open ground near said road and highway and dwelling houses; that, on the second day of November, 1883, while defendant so kept and maintained said pipe, for the purposes and in the manner aforesaid, Louisa Schmidt, a child of plaintiffs', without fault of plaintiffs, went to the end and outlet of said pipe, near said road, and while there on the day aforesaid, the defendant suddenly, without having given any signal or warning of any kind, blew out hot and boiling water, debris and steam through said pipe, left exposed as aforesaid, onto the ground and into a depression or hole thereon at the end of said pipe, and said child, then and there being, fell into said boiling water and the said debris, and the said Louisa Schmidt was thereby scalded and burned to death, and did from the effects thereof on the same day die.

"Plaintiffs say that the death of their said child was caused by the wrongful acts, neglects and defaults of defendant.

"By reason whereof plaintiffs are damaged in the sum of five thousand dollars, and an action hath accrued

to them under and by virtue of the statute in such cases made and provided. Wherefore plaintiffs ask judgment, for the sum of five thousand dollars, and for costs."

The evidence in the case tended to show that plaintiffs were husband and wife, and the lawful parents of Louisa Schmidt, the deceased. That said Louisa Schmidt, an infant and unmarried, three years and three days old, died on the second day of November, 1882, of the injuries received the same day and some three hours earlier, on the defendant's premises. That the defendant was the owner and operator of a distillery east of and near the City of Kansas, on the south side of the Missouri river; that the distillery buildings were situated on the south side of a public road forty feet wide, which runs northeast and nearly parallel to a slough, which was formerly a main channel of the river, but which has recently been to a great extent filled up, and that across the slough, and between it and the river proper, are situated the cattle-sheds of the defendant, which owns the property from the public road to the river, which is about one thousand feet north of the road. Along its western boundary a causeway or private road of defendant extends across the slough to its cattle-sheds. Along its eastern line, from the island across the slough to the public road, the defendant had a fence, which was also extended up to the public road, to the west or southwest until it joined some buildings, which continue the fence up to within some seventy-five or eighty feet of the corner of the public road and the causeway aforesaid, and for this distance along the public road, and also along the causeway, there was no fence or other erection to prevent people from entering the grounds of the defendant between the public road and the slough. This public road was considerably traveled by the neighbors, the gardeners, and others living down the river, and the distillery employes. The slough was filled with water which rose and fell with the

river, and was a muddy, filthy place,. owing to the discharge of waste and offal into it from the distillery and the cattle-barns. Upon this open space, between the road and the slough, there were three large cottonwood trees. The ground was rough and somewhat broken, but at this time was dry and passable, firm and not muddy. A twelve-inch sewer pipe passed from the distillery under the public road, and came out and discharged upon this lot some forty feet or more north of the public road and a few feet east of the causeway. This pipe conveyed refuse matter, swill and water, which wore a channel from the mouth of the sewer some two feet or more deep, down to the mouth of the slough. The escape-pipe, a small iron pipe from the boilers of the distillery, of which there were six, was passed under the public road and came out some fifteen or eighteen feet north and east of the mouth of the sewer-pipe. It came out of the ground about half way down the bank of the slough, which was the old river bank, and was three or four feet high, It had been a higher bank, but the deposits of sand had filled the slough up so that it sloped towards the slough. This pipe protruded from the bank some eighteen inches, and was held in place by a stone placed under it in the bank. It was used for blowing out the boilers, and discharged steam, hot or boiling water and mud, and was used whenever it was necessary to blow out the boilers—once a day, or oftener if required. The pipe was some two feet above the level of the slough-water at the time, and from six to fifteen feet from the water. In front of the pipe, the water discharged from it had worn a hole fifteen or eighteen inches wide and twelve or fifteen inches deep. This steam-pipe was about ten feet from these cottonwood trees, and at its mouth the ground was firm. Children played around the houses, and there were quite a number in the neighborhood. In the water in this hole, lying crosswise of it, the head and feet out, and her

body in the water, the child Louisa was found. The water was hot. She was scalded and died some three hours afterwards in consequence of the scalding. The plaintiffs reside some two hundred and fifty feet west of the pipe, in a house fronting on the public road. A short time before she was found she had asked permission of her mother to go over to Behren's house, which was adjoining that of Schmidt's on the east. She had gone to Behren's, and had gone in company with Behren's children, a girl eight years old and a boy four years old, who went to get water in a little tin bucket from the sewer. The Behren's girl got her water from the sewer, and had turned to go home when she heard a scream, and going back, found Louisa fallen into the water in the hole in front of the escape pipe. Louisa had not been gone from home more than ten minutes until the accident happened. The house of Behren's was two hundred and twenty-three feet west of the pipe, the Schmidt's next beyond, and still further on were two or three other houses in which families with their children resided, and also a drug store. There was no fence to keep people from going on the ground; but there was a notice on a board upon one of the cotton-wood trees, forbidding trespassers. The said Louisa was a bright, intelligent girl, three years and three days old. The plaintiff, John G. Schmidt, was at the time a laborer; had formerly been in the defendant's employ, and was by trade a stone-cutter. The plaintiff, John G. Schmidt, is now thirty-five years of age, and plaintiff, Anna, his wife, is twenty-three years old. Plaintiff, John G. Schmidt, employed a physician to attend the deceased when injured, and paid the expenses, and also her funeral expenses. Plaintiffs were in the habit of exercising good care over their child, and had once warned her not to go to the defendant's waste-pipe. Defendant could have put up a fence enclosing the pipes without difficulty. The hog pen shown on the map was

not built at the time of the accident, but afterwards. One witness, Mrs. Gluck, testified that she had a clothes line between the end of the escape pipe and the slough, and she also testified that her clothes line was east of the escape pipe. Annie Ernst, who worked for the Behrenses, testified that she had herself gone to the waste pipe for water; and men who worked at defendant's cattle sheds were in the habit of washing the filth from their boots at the end of the waste pipe. Witness Fluellen saw a couple of the Behren children getting water from the waste pipe before the accident. And this was all the evidence.

Plaintiffs obtained a judgment for five thousand dollars, from which defendant appealed. We will not notice any of the instructions, given or refused, except the first of defendant's refused instructions, which declared that: "Upon the pleadings and evidence in the case, the plaintiffs are not entitled to recover, and the jury will find their verdict for defendant."

Waiving, for the present, a consideration of the question relative to the sufficiency of the petition, and conceding, for the argument, that it states a cause of action, did the evidence establish such a state of facts as renders defendant liable?

It is a well established general proposition of law, that the owner of property is under no obligation to keep it in a condition which will insure the safety of persons who go upon it without his license or invitation. *Hughes v. Railroad,* 66 Mo. 325; *Turner v. Thomas,* 71 Mo. 596; the case of *Nagel v. Railroad,* 75 Mo. 653, belongs to a class of cases which qualify the general doctrine, and hold, that where the owner permits, upon his premises, dangerous machinery, or other dangerous things, likely to attract children, and does not guard it to prevent injury to them, he is liable for any injury they may sustain, in consequence of his neglect to place guards about it. The evidence in this case does not

show that the escape-pipe, at its outlet on the defend-ant's premises, or the place into which it discharged the boiling water, was attractive to children.    It was a dirty, filthy place, forty feet or more north of the public road. The house of Behren is two hundred and twenty-three feet west of the pipe, and Schmidt's next beyond, and these were the nearest residences to the escape-pipe. There is no evidence that children were in the habit of resorting to this place for amusement or otherwise. There is nothing to show that the Behren children, with whom Louisa Schmidt went there, were ever there but once before, or that any other children were ever at that place.    There was a notice on a board, nailed to a cotton-wood tree on defendant's premises, forbidding people going upon the ground.    It is not even shown that de-fendant knew that the water discharged from the waste-pipe had made the hole in the ground, into which Louisa fell, and there is not a particle of evidence of negligence on the part of defendant, unless it be negli-gence to have used its property for its convenience, in a manner which might occasion injury to a trespasser upon its premises.

An owner of property cannot place temptations upon it, to allure any one to a dangerous place upon its premises, and escape liability for injury, that even a trespasser may sustain, in yielding to the temptation to go there.    Nor can he place dangerous, unguarded machinery, or other dangerous things, so near a public street or highway, as to endanger persons thereon, without liability for damages to one occasioned thereby ; but, to assert a proposition stronger than these, against the owner of property, were to deny his domin-ion over it and compel him to use it, not for his own, but for the public convenience.    The petition should have averred, either that the place, where Louisa lost her life, was attractive to children, by reason of the escape-pipe discharging the boiling water there, or that children in

the neighborhood were in the habit of resorting there to play, or to witness the escape of the water and steam from the pipe. Some fact should have been stated, to show that defendant was not properly exercising its dominion over its own property. The judgment, with the concurrence of all the judges, is reversed.

## On re-hearing.

HENRY, C. J.—Counsel for respondents are in error in their suggestion, that we overlooked some of the facts in the case, or the instructions asked by defendant, submitting to the jury the question of the attractiveness of the escape-pipes, etc., to children. The bill of exceptions, so far as relates to the testimony, was literally embodied in the opinion, and upon the facts, which the evidence tended to prove, this court unanimously held, that a demurrer to the evidence should have been sustained.

This was the principal and only ground, upon which the reversal was based ; but we still think, as was said in the opinion, that: "The petition should have averred, that the place where Louisa lost her life, was attractive to children, by reason of the escape-pipe discharging boiling water there, or that children in the neighborhood were in the habit of resorting there to play, or to witness the escape of the water and steam from the pipe. Some fact should have been stated, to show that defendant was not properly exercising its dominion over its own property."

Could any court, upon the facts alleged in the petition, disregarding the general allegation of negligence, say that the defendant was improperly using its property ? That the escape-pipe was *per se* a nuisance, or that, discharging the boiling water upon defendant's own premises, sixty feet from the highway, "in the neighborhood and vicinity of several inhabited dwell-

ing houses along said road," was an attractive and dangerous place to children? "Neighborhood" and "vicinity" are not terms which express any definite idea of distance. A few feet, or several hundred yards, or even a greater distance from the escape-pipe, would have been in its "vicinity" or "neighborhood." But the case made by the testimony was, if possible, weaker for plaintiffs than that alleged in the petition. The nearest inhabited dwelling house, the evidence shows, was seventy-five yards from the point where the escape-pipe discharged the steam and boiling water upon defendant's premises. If there had been any evidence, which would have warranted a verdict for plaintiffs, the defendant's instruction given might have cured the defect in the petition. The judgment was not reversed for the fault in the petition. But as plaintiffs, on an amended petition, alleging facts, which show that the place where the child lost her life was attractive to children, or that, to the knowledge of defendant, children were in the habit of resorting to it, for amusement or otherwise, might establish a liability on the part of the defendant, we will modify the judgment by remanding it for another trial. All concur.