**BEAUMONT IRON WORKS v. DURON et al.**
(No. 1437.)

Court of Civil Appeals of Texas. Beaumont.
July 22, 1927.

Rehearing Denied Sept. 21, 1927.

1. Negligence ⊙⟹111(1)—Petition, in suit for injuries to minor playing on derrick, sufficiently stated cause of action under attractive nuisance doctrine.

Petition, in suit to recover for injuries to a minor while playing on derrick, *held* to sufficiently state cause of ·action under the attractive nuisance doctrine.

2. Negligence ⊙⟹136(19)—Evidence held insufficient as matter of law to show that derrick on which minor was injured was unusually attractive to children.·

In suit under the attractive nuisance doctrine, to recover for injuries to minor while playing on derrick, evidence *held* insufficient as a matter of law to support finding that hoisting ·derrick and operating machinery was unusually attractive to children, or that children customarily and habitually played around such machinery with defendant's knowledge.

3.· Negligence ⊙⟹136(29)—Evidence held insufficient as matter of law to establish that minor injured when playing on derrick was wanting in discretion.

In suit for injuries to minor while playing on derrick, evidence *held* insufficient as matter of law to show that injured minor was a child of such tender years, or was so wanting in discretion and judgment that he did not understand danger incident to being about and playing with such machinery.

4. Negligence ⊙⟹122(6)—Plaintiff, suing for injuries to minor while playing on derrick, has burden of proving lack of age, experience, or mental faculties.

Plaintiff, in suit to recover for injuries to minor while playing on derrick, has burden of proving that child injured was so wanting in age, experience, or ordinary mental faculties as not to know and appreciate dangers and probable consequences.

Appeal from District Court, Jefferson County; J. D. Campbell, Judge.

Suit by· Marie Berea, for herself and as mother and next friend of her minor son, Robert Duron, against the Beaumont Iron Works. Judgment for plaintiffs, and defendant appeals. Reversed and rendered. ·

Crook, Lefler, Cunningham & Murphy, of Beaumont, for appellant.

Howth, Adams & Hart, of Beaumont, for appellees.

HIGHTOWER, C. J. This suit was filed by Marie Berea, for herself and as mother and next friend of her minor son Robert Duron, against appellant, Beaumont Iron Works, for the recovery of damages because of personal injuries sustained by Robert Duron, the minor, which, it was alleged, were caused by negligence on the part of appellant. The accident occurred on November 17, 1923, in the city of Beaumont, on the private premises of appellant, Beaumont Iron Works, a corporation, which was at that time engaged on a large scale in the manufacture and sale of iron and iron machinery and articles of many kinds. Upon its premises where the injury occurred, appellant, in connection with its iron factory, necessarily used and operated what is called in this record, a large hoisting derrick made of steel. This derrick is .described in the pleadings and the evidence as an A-frame derrick. The witnesses say that this derrick is shaped like the letter "A" leaning over. The derrick extends high into the air, and the legs of the derrick at the bottom are securely fastened into a, concrete platform. In connection with this derrick, operating machinery, such as a large boom, .which the evidence shows is between 45 and 50 feet in length, and drums and cylinders and steel cables and cog wheels, a ratchet wheel, and other appliances, are used. The evidence shows without dispute that this hoisting derrick and the ·operating machinery used in connection therewith was used by appellant in its business for handling ponderous and heavy articles in loading them and unloading them on railroad cars placed upon side tracks at the premises of appellant for that purpose. This derrick with its machinery is capable of handling iron articles and machinery in general of more than 10 tons in weight. The large boom that we have mentioned itself weighs several tons. This boom is so adjusted on the derrick that it can swing around from place to place. It is larger in the middle than it is at either end; in other words, the boom tapers from the middle towards each end. This boom is handled by the cables and drums, and at the end of the boom that swings around for the purpose of loading or unloading heavy or ponderous articles is a large grab hook fastened to the boom by the cable, and this hook itself, as the evidence shows, weighs in excess of 500 pounds. The steel boom is not made of solid steel, but of bars of steel, and resembles lattice work. Some portions of the machinery used in connection with this hoisting derrick are made stationary upon a platform or table about 3 feet above the ground. Appellant's premises, where this hoisting derrick and machinery are located, is in the manufacturing district or center of the city of Beaumont, and, in addition to appellant's iron manufacturing concern, there are such concerns as railroad shops, railroad switches, sawmills, spurs, box factories, and other wood-manufacturing concerns, lumber yards, and ricemills.

⊙⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The evidence does not show with definiteness how long this hoisting derrick and machinery used in connection with it had been used and operated by appellant prior to the time of Robert Duron's injury, but the reasonable inference from the evidence in the record is that it had been in necessary use and operation by appellant in the prosecution of its business for several years prior to that time. The evidence shows that at the time of Robert Duron's injury there were several railroad spurs or side tracks in close proximity to this hoisting derrick, and one of these tracks was within approximately 20 feet of this derrick. It was alleged in the plaintiffs' petition, and the proof sustains the allegation, that at the time of Robert Duron's injury, and for a long time prior thereto, many people in that vicinity used these railroad spurs and side tracks, and especially the railroad track nearest the derrick, as a footpath in traveling in that vicinity, and this was without protest, so far as the evidence shows, from the railroad companies or appellant.

On the morning that Robert Duron was injured, he and his brother, Mike, were sent by their mother from their home to what is called the Beaumont Box Factory to get wood, and in going to the box factory they traveled along the railroad track, which was about 20 feet from this hoisting derrick. They went to the box factory, but failed to get wood on that occasion, and as they came along back stopped, when they were opposite this hoisting derrick, and left the railroad track, stepped on to a platform extending from the derrick to within about 7 feet of the track, and went on out to the derrick. Shortly after reaching the derrick Mike Duron, the younger brother, went around on the opposite side of the derrick from where his brother, Robert, was standing, to look at the derrick and machinery, and as he started back on the side of the derrick where Robert was, he slipped and came very nearly falling into a mud puddle and grabbed hold of an iron bar about 2 or 2½ feet in length that was placed under some part of the machinery in this hoisting derrick, and throwing his weight against the bar an attachment or appliance called a pawl that belonged in what is termed in the machinery a rachet wheel was displaced or pried out by the iron bar, and thereby the machinery used in connection with the derrick was rapidly and suddenly placed in motion, and the large steel boom that we have mentioned, which at that time was hoisted and in an almost perpendicular position, was caused to fall, making a loud noise, and Robert Duron, who was standing some 3 or 4 feet from the machinery, became frightened, so the evidence tends to show, and in some way got his left hand in the cog wheels of the machinery, and all the fingers, with the exception of the thumb, were mashed off.

At the time of his injury Robert Duron, as best we can ascertain from the evidence in this record, was between 13 and 14 years of age, and his brother, Mike, was between 10 and 11 years of age. Their right of recovery in this suit for the injuries to Robert Duron is predicated and claimed upon the doctrine of attractive nuisances. The plaintiffs' petition in this case is very lengthy and carefully drawn so as to bring the case, as made by the petition, within the doctrine of attractive nuisances, or, as the legal fraternity frequently call it, the doctrine of the "turntable" cases. It was alleged, in substance, that the hoisting derrick and the operating machinery used in connection with it, as we have briefly described it above, was unusually and irresistibly attractive to children of tender years and of immature judgment and discretion, and that this fact was well known to appellant, or by the exercise of proper care on its part would have been known and appreciated by appellant, and that on the occasion in question, because of the irresistible attractiveness of this derrick and operating machinery and the childish curiosity and impulse on the part of these boys, they went to this derrick and machinery to inspect it and play around it, and that they were of such tender years and so wanting in discretion and judgment that they did not appreciate and realize the danger that they would be in in being around this derrick and machinery. It was alleged, in substance, that, in view of the unusual attractiveness of this derrick and machinery to children of tender years and of immature judgment and discretion, it was the duty of appellant maintaining this machinery to have used ordinary care in safeguarding this derrick and machinery, so that young children such as Robert and Mike Duron out of curiosity and childish sport might not come in contact with the operating machinery of this derrick and thereby become injured.

As we read the petition, there are only three distinct grounds of negligence alleged on the part of appellant. One is, in substance, that appellant was negligent in leaving the heavy boom used in connection with this derrick raised high in the air, as it was on the occasion in question, instead of being lowered to the ground or on some object near the ground, where it could not fall, and another alleged act of negligence is, in substance, that appellant was negligent in not having some kind of appliance or guard over the ratchet wheel and cog wheels of this machinery, so that children would have been prevented from getting their hands in this dangerous machinery, and thereby be injured, when in motion, and the other alleged act of negligence is that appellant was guilty of negligence in leaving the iron bar under the ratchet wheel, this being the bar that Mike Duron grabbed when he fell in the mud puddle, and which, it is alleged, pried off the pawl in the wheel and set the machinery in motion. All of these

acts of negligence were alleged to be jointly and severally a proximate cause of the injury to Robert Duron. The prayer was for recovery in favor of Robert Duron for $10,000, and in favor of Mrs. Berea, his mother, for $5,000.

Appellant answered by general demurrer, several special exceptions, general denial, and plea of contributory negligence on the part of Robert and Mike Duron.

The case was tried with a jury and was submitted upon special issues, and on the verdict as returned judgment was entered in favor of Robert Duron for $3,000 and in favor of Mrs. Berea for $2,000, and after its motion for new trial had been timely made and overruled, appellant prosecuted this appeal and has advanced in its brief a large number of assignments of error, with relevant propositions, challenging the trial court's judgment in this case.

[1] Counsel for appellant first contend that the trial court was in error in refusing to sustain the general demurrer. As we have stated above, the petition in this case is unusually lengthy. It describes the derrick and operating machinery in minutest detail, and alleges definitely how the injury was sustained, and charges specifically wherein appellant was guilty of negligence. It alleges in minutest detail the attractive features of this derrick and machinery by which the plaintiffs claim Mike and Robert Duron were irresistibly attracted and allured to this machinery on the occasion in question, and further alleges that appellant had full knowledge, or by the use of ordinary care would have had full knowledge, of the irresistibly attractive features of this derrick and machinery to children of tender years and immature judgment and discretion. It is further alleged that Mike and Robert Duron were of such tender years and so wanting in judgment and discretion that they could not and did not appreciate the danger that they would be in in going about this derrick and machinery. As we have said, so far as the petition is concerned, it was not subject to appellant's general demurrer. It made a case for recovery under the attractive nuisance doctrine. Nor do we believe that the petition was vulnerable to any of the special exceptions interposed by appellant, and the court's ruling on the exceptions, both general and special, was not error. Therefore all assignments interposed by appellant challenging the action of the court in overruling its general demurrer and several special exceptions are overruled.

We have also concluded, after careful consideration, that there is no reversible error in the trial court's charge in this case, and that the charge was proper if the evidence bearing upon the essential elements of recovery in a case of this nature had been sufficient to carry the case to the jury. We therefore overrule all assignments of appellant challenging the correctness of the court's charge. We are also of opinion that there was no error on the part of the trial court in refusing any of the requested special charges or issues of appellant, and overrule all assignments in that connection.

The trial court, after properly defining negligence, ordinary care, and proximate cause, submitted the case to the jury on special issues, in answer to which the jury found: (1) That the hoisting derrick and operating machinery in connection therewith constituted a mechanical device specially and unusually attractive to children of tender years and immature judgment; (2) that Robert and Mike Duron were caused to go upon appellant's premises by, and as a result of, the unusual attractiveness of the derrick and operating machinery; (3) that appellant and its authorized agents left the derrick with the boom hoisted and suspended in the air without placing and attaching a guard over the pawl and ratchet wheel; (4) that the act of appellant and its agents in leaving the boom suspended without attaching a guard over the pawl and ratchet wheel constituted negligence under all the facts and circumstances in evidence; (5) that the negligence of appellant and its agents, in leaving the boom up without placing a guard over the pawl and ratchet wheel, was a direct and proximate cause of the injuries to Robert Duron; (6) that appellant and its authorized agents left the boom suspended in mid-air above the ground without placing guards over the cog wheels of the operating machinery; (7) that the act of appellant and its agents in leaving the boom suspended in the air without placing guards over the cog wheels of the operating machinery constituted negligence upon appellant's part; (8) that such negligence was a direct and proximate cause of the injuries to Robert Duron; (9) that appellant and its agents left the boom of the hoisting derrick suspended in mid-air above the ground, and also left an iron bar under or near the pawl in the ratchet wheel and in such position that when children came upon the premises they could reach and handle or play and pry with the iron bar; (10) that the act of appellant and its agents in permitting the boom to remain suspended in the air and in leaving the iron bar under or near the pawl in the ratchet wheel constituted negligence, under all the facts and circumstances; (11) that such negligence was a direct and proximate cause of the injuries to Robert Duron.

In answer to a special issue requested by appellant, the jury found that Robert Duron, in going upon the appellant's premises, or in permitting or encouraging Mike to go there on the occasion in question, was not guilty of contributory negligence.

The eighth proposition advanced by counsel for appellant for reversal of this judgment is as follows:

"There being no evidence that defendant's machinery was specially and unusually attractive to plaintiff, or that he was attracted to said

premises by the unusual attractiveness of said machinery, or that he was on defendant's premises by any invitation otherwise expressed or implied, the court should have given defendant's requested instruction No. 1, which was to find for defendant."

[2] It was not claimed by the plaintiffs in this case that the boy Robert Duron was rightfully upon appellant's private premises, where he was injured, by any other than an implied invitation. Nor have we been able to find in this record any evidence that Robert Duron was attracted or allured upon appellant's private premises by any unusual attractiveness of the hoisting derrick or the machinery used in connection therewith. The boy Mike Duron, who, as we have shown, was between 10 and 11 years of age at the time of the injury, was a witness in this case, and he testified:

"We went over there to see how it worked. * * * That wasn't the first time that I had seen it. I had been by there and had seen it, but that is the first time I ever went to the machine. That was the first time I ever went over to any part of the machine. I had seen it a number of times, but I didn't go to it until this one time. I had seen it nearly every time I passed by. I saw it more than 10 or 12 times before I went to San Antonio. I saw it nearly every time I went by it, and I often went down that same road and up Crockett street. I think I saw it as much as 15 or 20 times before I went to San Antonio. I saw it nearly every day before I went to San Antonio. * * * I never did play on the vacant places on the grass. I never did play around on anything in there before. This is the only time that I went there, the time that Robert got his fingers cut off."

Robert Duron testified:

"The machine is located west of the main building back of the Beaumont Iron Works. There is a railroad running east and west, north of the machine, some 7 or 8 feet. * * * My brother and I stopped at the machine on our way back from the box factory, because we wanted to look at it and see how it worked. My brother went over there first and wanted to take a good look at it, and then I came on over and stood on the platform. My brother wanted to look at it good, so he went around the other side of it. I stood on the platform about 2 feet from the machine. * * * Before I went to San Antonio I had seen the machine. I had seen it a good many times. We lived in the same neighborhood. When I lived in Beaumont before, I passed by the machine a good many times. I never did go to where it was and play with the machinery. * * * The time I got my finger hurt over there was the first time I went over to the machine. My brother and I both wanted to go over there, but I really didn't get to the machine when it started.

"When I lived in Beaumont before, down there near Jefferson alley, near the Beaumont Iron Works, my brother, Mike, and I often went near there to the sawmill to get wood, and we went right down the same railroad track, and passed within about 20 feet of the machine every time we went by there, but we never did go to the machine before, nor go around it, and the reason was that we didn't have time. We had to hurry home."

As pointed out by counsel for appellant, there is no other testimony in this record that any other children ever played with or fooled with this machinery and derrick in any way before Robert Duron was hurt.

The testimony in this record shows that for several years prior to about five months before Robert Duron was injured the family lived in the vicinity within a block or two of this derrick and machinery, and the evidence is without dispute to the effect that these two boys passed by this derrick and machinery many, many times along the railroad track in going to and from the woodyard and box factory to get wood and perform other errands for their mother. During all that time they did not attempt to go nearer this machinery than the railroad track passing by it. It does not stand to reason that this machinery was so unusually attractive to children as was pleaded in this case when the undisputed proof shows that these two boys saw it daily for several years, but never on any occasion attempted to play with or inspect or come in contact with it in any way, and, as a matter of fact, we have been unable to discover anything in this record that shows wherein or why this derrick and machinery could be specially or unusually attractive to children. It was constructed for hoisting, loading, and unloading the most ponderous articles and machinery, and was necessary, as the evidence shows, in carrying on appellant's manufacturing business. There was nothing to play on in connection with this machinery. There was nothing to ride on. There was nothing to climb that was alluring to children in any way, and, as a matter of fact, the record in this case not only fails to show that this machinery was calculated to unusually attract children of tender years, but there is not a particle of evidence in this record as we have read it, to show that any children were in the habit of visiting this machinery, or were ever attracted by it, or that appellant had any reason to suspect that children had ever been attracted by this ponderous and powerful machinery prior to the time Robert Duron was injured. It is true, as shown by this record by the testimony of a colored woman living in that vicinity, that on one occasion some time prior to Robert Duron's injury, she had heard some one in charge of appellant's premises tell a child to get off the premises because it was dangerous for him to be there. As to what the occasion was for this admonition the record is silent. It does not show whether the machinery was in full operation at that time and weighty and ponderous articles being handled over this derrick, or what the circumstances were under which this child was upon the premises and was admonished to

leave them. The evidence in this case falls far short of showing that children customarily and habitually played around this machinery. It was shown that there were a number of children in the vicinity of appellant's premises, anywhere from one to three blocks away. This proof was made by the plaintiffs in the case, and yet, notwithstanding the presence in that vicinity of so many children, the record, as we have stated, fails to show that any of them were ever attracted to this machinery, or attempted to examine or play with it in any way prior to the time of the injury in question.

In the case of San Antonio & A. P. Railway Co. v. Morgan, 92 Tex. 98, 46 S. W. 28, the Supreme Court of this state, in an opinion by Mr. Justice Denman, laid down for the guidance of the bench and bar, in very clear language, the necessary elements for recovery in a case of this character. In that case the plaintiff sought recovery because of injuries to a child on a railroad turntable. The turntable was upon the private premises of the railroad company, but it was claimed by the plaintiff that the turntable was unusually and irresistibly attractive to children of tender years and immature judgment and experience, and the question that the court was discussing was whether the petition in the case was subject to general demurrer. Judge Denman, among other things, said:

"In order to state a cause of action against the defendant in a case like this, the facts alleged in the petition must show (1) a duty owed by defendant to the party injured; (2) a failure on part of defendant to exercise the degree of care required of it by law in the performance of that duty. It takes both to constitute negligence. The sole assault made here upon the petition under the demurrer is that it does not show such a duty to have existed. If it does not, the second question, as to whether the company used the degree of care the law would require of it in the performance of such a duty, cannot be reached. Dobbins v. Railway Co. [91 Tex. 60] 41 S. W. 62 [38 L. R. A. 573, 66 Am. St. Rep. 856]. We will therefore confine our examination to the question as to whether the petition shows such duty.

"The law imposes upon the carrier certain duties towards his passenger, upon an employer certain duties towards his employee, and upon a person traveling a public street or highway certain duties towards others thereon, for the reason that these various relations of persons to each other are lawful. Hence, when facts are alleged showing the particular relation, the duty follows as a matter of law. When, however, one enters upon the private property of of another, his relation to that property and the owner thereof is not prima facie lawful, and therefore the law does not merely, by reason of his presence thereon, impose upon the owner any duty of care for his protection, although his wrongful presence does not relieve the owner of the general duty imposed upon him by law, as a member of society, not to intentionally injure another. In such a case, to state a cause of action against the owner for damages for injury inflicted upon him while thereon, the petition need only show a violation of such general duty, or, in other words, an intentional injury. Such intent can be established either by direct evidence or by circumstances showing such a reckless disregard of the lives and safety of others as to estop the owner from denying the intent. As illustrating, if not fully supporting, this principle, see Hydraulic Works Co. v. Orr, 83 Pa. 332, as explained in Gillespie v. McGowan, 100 Pa. 144 [45 Am. Rep. 365]; Schmidt v. Distilling Co., 90 Mo. 284, 1 S. W. 865 [2 S. W. 417, 59 Am. Rep. 16]; Harriman v. Railway Co., 45 Ohio St. 12, 12 N. E. 451 [4 Am. St. Rep. 507]; Dunham v. Pitkin, 53 Mich. 507, 19 N. W. 166; Penso v. McCormick [125 Ind. 116] 25 N. E. 156 [9 L. R. A. 313, 21 Am. St. Rep. 211]. If, however, the person entering upon the private property of another does so by invitation of the owner, a lawful relation is thereby established, and the law imposes upon the owner a duty of care for his safety, the degree of which we need not consider here. Such invitation may be express or implied. Where it is claimed to have been express, it is a mere question of fact as to whether it was extended, and no legal difficulty exists. Where, however, it is sought to establish the fact of invitation from circumstances, the greatest difficulty arises in determining the character of circumstances from which the fact of invitation can be inferred. This is especially true where, as in the case before us, the invitation is sought to be established by estoppel against what was in all probability the true intent of the owner.

"It has been contended broadly that when an owner places or permits anything upon his property which is attractive to others, and one is thereby induced to go thereon, the invitation may be inferred as a fact by the court or jury. Now, since it is manifest that to some classes of persons, such as infants, the things ordinarily in existence and use throughout the country, such as rivers, creeks, ponds, wagons, axes, plows, woodpiles, haystacks, etc., are both attractive and dangerous, it is clear that the adoption of such a broad contention would be contrary to reason, lead to vexatious and oppressive litigation, and impose upon the owners such a burden of vigilance and care as to materially impair the value of property and seriously cripple the business interests of the country. Therefore it has been generally held that the invitation cannot be inferred in such cases. These cases rest upon the sound principle that, where the owner makes such use of his property as others ordinarily do throughout the country, there is not, in legal contemplation, any evidence from which a court or jury may find that he had invited the party injured thereon, though it be conceded that his property or something thereon was calculated to, and did, attract him. [Citing authorities.] * * * Where, however, the owner maintains upon his premises something which, on account of its nature and surroundings, is especially and unusually calculated to attract, and does attract, another, the court or jury may infer that he so intended, and hence invited him. Where one exhibits on his own land, near where children are likely to be, pictures or unusually attractive machinery, etc., he can expect no other result than that it will appeal to the known instincts of a child of immature judgment, and cause him to venture

thereon, just as the dog was drawn into the baited trap by the scent of meat. * * *

"Thus we see (1) that a general duty is imposed upon an owner as a member of society not to intentionally injure any one; and (2) that, if he invites one on his premises, an additional duty is imposed to use care to avoid his being injured; and that while the first duty exists in all cases, and its violation may be shown by direct evidence or by circumstances; the second, as well as its violation, may be shown by direct evidence or by circumstances. Therefore, if the party injured shows in his petition either that his injury was intentional, as above indicated, or that he was invited and subsequently injured by reason of the failure of the owner to use the care required of him by law, he states a cause of action. In so far as the turntable cases and other cases involving injuries upon dangerous machinery on private property may be considered to lay down the broad proposition that the owner can be held liable without proof of either an intent to injure or an invitation, as these have been above explained, we do not think them based upon sound principle. We do not think the petition in this case shows an invitation, in that it neither alleges such fact, nor that the turntable was unusually attractive; nor does it allege that there was any intent to injure, within the meaning of the principles above discussed. We think the fact of invitation or the fact of an intent to injure, as the case may be, are issuable ones to be found, and probably should be alleged specifically, or at least such facts should be stated as to make it clear that such issue or issues are presented to be passed upon."

The court reached the conclusion that the general demurrer in that case should have been sustained. While that case went off on a general demurrer, it is a cardinal rule, of course, that, before recovery can be had on allegations necessary to be made, the proof must sustain the allegations. So in this case, as we have said, the petition, as against a general or special demurrer, was good, in that the petition itself shows all the essential elements for recovery by the plaintiff in a case of this character. But what we hold is that the evidence falls far short of sustaining these allegations. The Morgan Case just quoted from has been followed in a long line of decisions in this state, both by the Supreme Court itself and the several Courts of Civil Appeals. Stamford Oil Mill Co. v. Barnes, 103 Tex. 409, 128 S. W. 375, 31 L. R. A. (N. S.) 1218, Ann. Cas. 1913A, 111; M., K. & T. Ry. Co. of Texas v. Moore (Tex. Civ. App.) 172 S. W. 568; Evansich v. Railway Co., 57 Tex. 126, 44 Am. Rep. 586; Railway Co. v. Clay, 55 Tex. Civ. App. 526, 119 S. W. 730; McCoy v. Light Co. (Tex. Com. App.) 239 S. W. 1105;

St. Louis Southwestern Railway Co. v. Davis (Tex. Civ. App.) 110 S. W. 939; Manlove v. Lavelle (Tex. Civ. App.) 235 S. W. 324.

Having reached the conclusion, after a careful examination of all the evidence in this case, that there was no evidence adduced upon the trial showing that the hoisting derrick and operating machinery of appellant was unusually attractive to children of tender years and immature judgment and discretion, which proof was indispensable to a recovery by the plaintiffs in this case, we sustain appellant's eighth proposition challenging the trial court's action in declining to give its requested peremptory instruction.

[3, 4] We also sustain appellant's ninth proposition, which is, in substance, that the evidence in this case failed to show that Robert Duron, at the time he was injured, was a child of such tender years, or that he was so wanting in discretion and judgment that he did not understand the danger incident to being about and fooling with appellant's machinery in question. Robert Duron himself testified in this case, in substance, that he knew and realized that, if the heavy boom that we have described should fall on him, it would injure him. He also testified that he knew that, if he got his hand in one of the cog wheels of the machinery, it would injure him. We think this record discloses that Robert Duron was a boy of average intelligence for one of his age, notwithstanding able counsel for appellee contend to the contrary. While it is true that the question whether a child suing for injuries is so wanting in age, experience, or ordinary mental faculties as not to know and appreciate the dangers and probable consequences of its acts, is one of fact, still the burden of proving such issue of fact rests upon the plaintiff. Manlove v. Lavelle (Tex. Civ. App.) 235 S. W. 324, and authorities there cited. We do not believe that the evidence in this case touching Robert Duron's inability to understand the danger of being around the machinery in question was such as to leave that issue one of fact for the jury, and it was the duty of the trial court to peremptorily instruct the verdict for appellant on that issue.

From these conclusions it results that the judgment in this case should be reversed, and since the case, it seems, has been fully developed, and that there is no liability on appellant's part for the injuries to Robert Duron, under the authorities cited, the judgment should be here rendered in appellant's favor. Such has been our order.