**DURON et al. v. BEAUMONT IRON WORKS. (No. 922–5009.)**

Commission of Appeals of Texas, Section B. June 13, 1928.

1. **Negligence ⬷23(1)—Owner of machinery attractive to children must exercise ordinary care to keep it in reasonably safe condition for their protection.**

Owner of machinery or device especially alluring to children of tender years must exercise ordinary care to keep such machinery in reasonably safe condition for their protection, where facts are such as to raise issue that owner knew, or in exercise of ordinary care ought to have known, that children were likely or probably would be attracted by machinery, and thus drawn to premises.

2. **Negligence ⬷134(4)—In personal injury action, evidence held to support finding that hoisting derrick was unusually attractive to children.**

In action against owner of hoisting derrick for injury to child when machinery started unexpectedly while child and brother were inspecting it, evidence *held* sufficient to support finding that device was of such nature as to be unusually attractive to child of tender age and immature judgment.

3. **Negligence ⬷136(29)—Contributory negligence of thirteen year old boy, injured while inspecting hoisting derrick, held for jury.**

In action against owner of hoisting derrick for injury to child when machinery started unexpectedly while child and brother were inspecting it, evidence *held* sufficient to take to jury question of contributory negligence of injured child thirteen years old, notwithstanding testimony that he realized injury would result if hand was caught in cog wheels.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

---

⬷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by Marie Berea for herself and as mother and next friend of her minor son, Robert Duron, against the Beaumont Iron Works. Judgment for plaintiffs was reversed (297 S. W. 1075), and plaintiffs bring error. Judgment of Court of Civil Appeals reversed, and that of trial court affirmed.

Howth, Adams & Hart, of Beaumont, for plaintiff in error.

Crook, Lefler, Cunningham & Murphy, of Beaumont, for defendant in error.

LEDDY, J. A full and accurate statement of the case, made by the Court of Civil Appeals, 297 S. W. 1075, is as follows:

"This suit was filed by Marie Berea, for herself and as mother and next friend of her minor son Robert Duron, against appellant, Beaumont Iron Works, for the recovery of damages because of personal injuries sustained by Robert Duron, the minor, which, it was alleged, were caused by negligence on the part of appellant. The accident occurred on November 17, 1923, in the city of Beaumont, on the private premises of appellant, Beaumont Iron Works, a corporation, which at that time engaged in a large scale in the manufacture and sale of iron and iron machinery and articles of many kinds. Upon its premises where the injury occurred, appellant, in connection with its iron factory, necessarily used and operated what is called in this record a large hoisting derrick made of steel. This derrick is described in the pleadings and the evidence as an A-frame derrick. The witnesses say that this derrick is shaped like the letter A leaning over. The derrick extends high into the air, and the legs of the derrick at the bottom are securely fastened into a concrete platform. In connection with this derrick, operating machinery, such as a large boom, which the evidence shows is between 45 and 50 feet in length, and drums and cylinders and steel cables and cog wheels, a ratchet wheel and other appliances, are used. The evidence shows without dispute that this hoisting derrick and operating machinery used in connection therewith was used by appellant in its business for handling ponderous and heavy articles in loading them and unloading them on railroad cars placed upon side tracks at the premises of appellant for that purpose. This derrick with its machinery is capable of handling iron articles and machinery in general of more than 10 tons in weight. The large boom that we have mentioned itself weighs several tons. This boom is so adjusted on the derrick that it can swing around from place to place. It is larger in the middle than it is at either end; in other words, the boom tapers from the middle towards each end. This boom is handled by the cables and drums, and at the end of the boom that swings around for the purpose of loading or unloading heavy or ponderous articles is a large grab hook fastened to the boom by the cable, and this hook itself, as the evidence shows, weighs in excess of 500 pounds. The steel boom is not made of solid steel, but of bars of steel, and resembles lattice work. Some portions of the machinery used in connection with this hoisting derrick are made stationary upon a platform or table about 3 feet above the ground. Appellant's premises, where this hoisting derrick and machinery are located, is in the manufacturing dis-

trict or center of the city of Beaumont, and, in addition to appellant's iron manufacturing concern, there are such concerns as railroad shops, railroad switches, sawmills, spurs, box factories, and other wood-manufacturing concerns, lumber yards, and ricemills.

"The evidence does not show with definiteness how long this hoisting derrick and machinery used in connection with it had been used and operated by appellant prior to the time of Robert Duron's injury, but the reasonable inference from the evidence in the record is that it had been in necessary use and operation by appellant in the prosecution of its business for several years prior to that time. The evidence shows that at the time of Robert Duron's injury there were several railroad spurs or side tracks in close proximity to this hoisting derrick, and one of these tracks was within approximately 20 feet of this derrick. It was alleged in the plaintiffs' petition, and the proof sustains the allegation, that at the time of Robert Duron's injury, and for a long time prior thereto, many people in that vicinity used these railroad spurs and side tracks, and especially the railroad track nearest the derrick, as a footpath in traveling in that vicinity, and this was without protest, so far as the evidence shows, from the railroad companies or appellant.

"On the morning that Robert Duron was injured, he and his brother, Mike, were sent by their mother from their home to what is called the Beaumont Box Factory to get wood, and in going to the box factory they traveled along the railroad track, which was about 20 feet from this hoisting derrick. They went to the box factory, but failed to get wood on that occasion, and as they came along back stopped, when they were opposite this hoisting derrick, and left the railroad track, stepped on to a platform extending from the derrick to within about 7 feet of the track, and went on out to the derrick. Shortly after reaching the derrick Mike Duron, the younger brother, went around on the opposite side of the derrick from where his brother, Robert, was standing, to look at the derrick and machinery, and as he started back on the side of the derrick where Robert was he slipped and came very nearly falling into a mud puddle and grabbed hold of an iron bar about 2 or 2½ feet in length that was placed under some part of the machinery in this hoisting derrick, and throwing his weight against the bar an attachment or appliance called a pawl that belonged in what is termed in the machinery a ratchet wheel was displaced or pried out by the iron bar, and thereby the machinery used in connection with the derrick was rapidly and suddenly placed in motion, and the large steel boom that we have mentioned, which at that time was hoisted and in an almost perpendicular position, was caused to fall, making a loud noise, and Robert Duron, who was standing some 3 or 4 feet from the machinery, became frightened, so the evidence tends to show, and in some way got his left hand in the cog wheels of the machinery, and all the fingers with the exception of the thumb, were mashed off.

"At the time of his injury Robert Duron, as best we can ascertain from the evidence in this record, was between 13 and 14 years of age, and his brother, Mike, was between 10 and 11 years of age. Their right of recovery in this suit for the injuries to Robert Duron is predicated and claimed upon the doctrine of attractive nuisances. The plaintiffs' petition in this case is very

lengthy and carefully drawn so as to bring the case, as made by the petition, within the doctrine of attractive nuisances, or, as the legal fraternity frequently call it, the doctrine of the 'turntable' cases. It was alleged, in substance, that the hoisting derrick and the operating machinery used in connection with it, as we have briefly described it above, was unusually and irresistibly attractive to children of tender years, and of immature judgment and discretion, and that this fact was well known to appellant, or by the exercise of proper care on its part would have been known and appreciated by appellant, and that on the occasion in question, because of the irresistible attractiveness of this derrick and operating machinery and the childish curiosity and impulse on the part of these boys, they went to this derrick and machinery to inspect it and play around it, and that they were of such tender years and so wanting in discretion and judgment that they did not appreciate and realize the danger that they would be in in being around this derrick and machinery. It was alleged, in substance, that, in view of the unusual attractiveness of this derrick and machinery to children of tender years and of immature judgment and discretion, it was the duty of appellant maintaining this machinery to have used ordinary care in safeguarding this derrick and machinery, so that young children such as Robert and Mike Duron, out of curiosity and childish sport might not come in contact with the operating machinery of this derrick and thereby become injured.

"As we read the petition, there are only three distinct grounds of negligence alleged on the part of appellant. One is, in substance, that appellant was negligent in leaving the heavy boom used in connection with this derrick raised high in the air, as it was on the occasion in question, instead of being lowered to the ground or on some object near the ground, where it could not fall, and another alleged act of negligence is, in substance, that appellant was negligent in not having some kind of appliance or guard over the ratchet wheel and cog wheels of this machinery, so that children would have been prevented from getting their hands in this dangerous machinery, and thereby be injured, when in motion, and the other alleged act of negligence is that appellant was guilty of negligence in leaving the iron bar under the ratchet wheel, this being the bar that Mike Duron grabbed when he fell in the mud puddle, and which, it is alleged, pried off the pawl in the wheel and set the machinery in motion. All of these acts of negligence were alleged to be jointly and severally a proximate cause of the injury to Robert Duron. The prayer was for recovery in favor of Robert Duron for $10,000, and in favor of Mrs. Berea, his mother, for $5,000.

"Appellant answered by general demurrer, several special exceptions, general denial, and plea of contributory negligence on the part of Robert and Mike Duron.

"The case was tried with a jury and was submitted upon special issues, and on the verdict as returned judgment was entered in favor of Robert Duron for $3,000 and in favor of Mrs. Berea for $2,000 and after its motion for a new trial had been timely made and overruled, appellant prosecuted this appeal and has advanced in its brief a large number of assignments of error, with relevant propositions, challenging the trial court's judgment in this case."

The Court of Civil Appeals reversed the judgment of the trial court, and rendered judgment in favor of defendant in error, assigning the following reasons therefor:

First. Because there was no evidence that defendant in error's machinery was specially and unusually attractive to plaintiff in error, or that he was attracted to said premises by the unusual attractiveness of said machinery, or that he was on defendant in error's premises by any invitation either express or implied.

Second. Because the evidence in the case failed to show that Robert Duron, at the time he was injured, was a child of such tender years, or that he was so wanting in discretion and judgment, that he did not understand the danger incident to being about and fooling with defendant in error's machinery in question.

The recovery in this case was based upon the "attractive nuisance" doctrine, which originated in what is known as the "turntable cases." The rule announced in those cases has been frequently held to apply with equal force to cases involving other and different machinery or devices which are specially and unusually attractive and alluring to children of tender years and immature judgment. These decisions do not extend the doctrine announced in the cases wherein it originated, but merely apply the same where the existent facts call for the operation of the rule. McCoy v. Texas Power & Light Co. (Tex. Com. App.) 239 S. W. 1105; S. A. & A. P. Ry. Co. v. Morgan, 92 Tex. 98, 46 S. W. 28; Stamford Oil Mill v. Barnes, 103 Tex. 413, 128 S. W. 375, 31 L. R. A. (N. S.) 1218, Ann. Cas. 1913A, 111; Little v. James McCord Co. (Tex. Civ. App.) 151 S. W. 835; Flippen Prather Realty Co. v. Mather (Tex. Civ. App.) 207 S. W. 121.

[1] The theory of liability under the attractive nuisance doctrine is that, where the owner maintains a device or machinery on his premises of such an unusually attractive nature as to be especially alluring to children of tender years, he thereby impliedly invites such children to come upon his premises, and, by reason of such invitation, they are relieved from being classed as trespassers, but are in the attitude of being rightfully on the premises. Under such circumstances, the law places upon the owner of such machinery or device the duty of exercising ordinary care to keep such machinery in reasonably safe condition for their protection, if the facts are such as to raise the issue that the owner knew, or in the exercise of ordinary care ought to have known, that such children were likely or would probably be attracted by the machinery, and thus be drawn to the premises by such attraction. Sioux City & P. R. Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745; Union Pacific R. Co. v. McDonald, 152 U. S. 262, 14 S. Ct. 619, 38 L. Ed. 434; Heller v. New York,

New Haven & H. R. Co. (C. C. A.) 265 F. 192, 17 A. L. R. 823.

[2] After a careful review of the evidence in this case, we are unable to agree with the soundness of either of the conclusions reached by the Court of Civil Appeals. We think the evidence amply supports the findings of the jury. In the first place, the photograph of the hoisting derrick, which is reproduced herewith, shows a device which a jury might conclude was well calculated to attract the eye of childhood. It was painted an attractice salmon color, and stood in bold relief, bright and attractive in the sunlight, while everything else about it was black, dirty, and greasy.

The giant boom, which shows to be lowered in the photograph, at the time of the accident was raised and extended some 40 or 50 feet in the air. It and the derrick also were latticed with steel strips, which rendered it easy to climb, thus constituting a mute appeal to the climbing propensities of the average boy. Connected with the machine were pulleys, cylinder drum, cogwheels, ropes, and there was a platform leading up to it. The machine was one not in such general use as to be familiar to the average child. Each of the boys testified that he was attracted by the machine and went over to examine it and see how it worked. They also stated that they had passed by the machine many times, and

Plaintiff's Exhibit Number Two (2)

had been theretofore attracted by it, but on these occasions had not had time to play with it; that they had made up their minds to go over and see how it worked as soon as they got a chance. In addition to this testimony, defendant in error's witness, Lillie Bias, testified on cross-examination as follows:

"I remember that an employee of the Beaumont Iron Works ran some boys from there some time before this boy was hurt. He told them that machine was dangerous for them to play with. I just couldn't tell you how long that was before this accident happened. It was longer than several weeks before that accident happened. I heard a man over there at the Iron Works talking about it—telling them to stay away from there, but I didn't see the boys at the time. I have seen boys around there all right. * * * There are a good many children in that neighborhood. They play all around on the railroad track around there. I have seen several children playing out there. I have seen them across there all right. I have seen them going over there like they were going to play with the machine. I haven't seen men at the Beaumont Iron Works run them away from there, but I have heard them running them off from there. * * * I remember that an employee of the Beaumont Iron Works ran some boys away from there some time before this boy was hurt. He told them to keep away from there—that it was dangerous. He told them that machine was dangerous for them to play with."

This witness testified that, while she was sitting in her room, she looked over in the direction of the machinery, and saw Robert and Mike go to it and begin to monkey with it, stating:

"It looked to me, from where I was sitting in the window, the big boy was trying to turn that wheel and the little boy was pulling down on the lever."

The facts above set forth we think more clearly raise the issue as to whether the machinery in question was of such a nature as to be unusually attractive to children than do those involved in the McCoy Case, supra, in which the holding of the Commission of Appeals was expressly approved by the Supreme Court. In that case the device consisted of an iron tower carrying high voltage wires of the company, and the only attractive feature was steps by which one might ascend the tower. No machinery of any kind was connected therewith. The device in this case was of such a nature as to be not only attractive for climbing purposes, but the machinery connected therewith which operated the giant boom was reasonably calculated to, and it seems did, arouse the curiosity of the injured boy and his brother. It also appears that the attractiveness of this device had, theretofore allured other boys to inspect it.

We think the minute description of the device shown by the testimony, the photographs exhibited thereof, coupled with the testimony of the boys that they were attracted to the machine, and the further evidence that other boys seem to have been likewise attracted thereby, furnishes sufficient basis for the jury's finding that the device in question was of such a nature as to be unusually attractive to children of tender age and immature judgment.

[3] Neither are we able to agree with the conclusion of the Court of Civil Appeals that the injured boy was guilty of contributory negligence as a matter of law. This conclusion seems to be based upon the injured boy's testimony to the effect that he knew and realized that, if the heavy boom should fall on him, it would injure him, and also that he knew, if he got his hand in one of the cogwheels of the machinery it would injure him. We do not think the knowledge above indicated is the proper standard by which the boys' conduct should be measured. Of course, a boy of even five years of age would know that, if the heavy iron boom should fall on him, or he should place his hand in between moving iron cogwheels, he would be injured. If the evidence had shown that he had consciously caused the boom to fall on him or designedly placed his hand in between the cogs, then his admission of the knowledge of such dangers would properly bar a recovery. It is fairly inferable from the testimony that neither of the boys knew that the machinery would be put in motion, and it was an involuntary act upon the part of the younger boy that actually set it in motion. By reason of the stress of excitement caused by the unexpected starting of the machinery, the falling of the heavy boom, the rattle and roar of the machinery, with sparks flying therefrom, created a terrifying situation for the boys, and under these circumstances in some unexplained way the older boy's hand was caught in the cogwheels. It does not appear that he consciously or purposely placed his hand in such wheels.

Whether the injured boy, who was only thirteen years of age, was so wanting in age, experience, or ordinary mental faculties as not to know and appreciate the dangers and probable consequences of the acts he was performing at the time he was injured was properly one of fact for the jury.

In the case of Galveston Electric Co. v. Antonini (Tex. Civ. App.) 152 S. W. 841, a charge on contributory negligence, similar to the one given in this case, was approved, and in discussing the rule applicable to children of tender years it is said:

"The question is not simply whether the appellee had sufficient capacity to know that it was dangerous to cross the track in front of an approaching car, but whether a boy of his age, intelligence, and discretion would ordinarily have sufficient prudence or care for his safety not to take the chance that he did of getting across the track before the car would reach the place of his crossing."

In discussing a similar question in the case of Railway v. Boozer, 70 Tex. 537, 8 S. W. 121 (8 Am. St. Rep. 615), Judge Stayton says:

"We cannot say that the same degree of care should be exacted of a boy of the appellee's age [12 years] as must be of an adult. Whether he used that care in attempting to cross the track, and in ascertaining the danger that attended his act, incumbent on one of his age, was a question submitted to the jury. * * * The jury were in position to determine whether the acts of the appellee were, in one of his age, the exercise of such care as such a person should exercise."

In the case of Cook v. Navigation Co., 76 Tex. 358, 13 S. W. 477 (18 Am. St. Rep. 52), the Supreme Court, speaking through Judge Gaines, stated:

"We think, however, that when the age of the minor is between 13 and 14 [years] the question of capacity and intelligence should be left for the determination of the jury. * * * Not being capable of exercising that degree of circumspection in the face of danger that adults are expected to use, a higher degree of care must be exercised towards them."

To the same effect see Railway Co. v. Mother (Tex. Civ. App.) 24 S. W. 82; Railway Co. v. Hall, 83 Tex. 675, 19 S. W. 121; Railway Co. v. Simpson, 60 Tex. 106; Railway Co. v. Ball, 38 Tex. Civ. App. 279, 85 S. W. 458; Railway Co. v. Carter (Tex. Civ. App.) 79 S. W. 320; Railway Co. v. Bulger, 35 Tex. Civ. App. 478, 80 S. W. 560; Railway Co. v. Crump, 102 Tex. 253, 115 S. W. 26.

An examination of the record discloses that the trial court, in submitting the case to the jury, fully and fairly protected and safeguarded every right of the defendant in error. In fact, in several respects the issues were submitted even more favorably to defendant in error than it was entitled to under the law. We find no error presented that demands a reversal of the judgment of the trial court.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed, and the judgment of the trial court affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed.